**KUHN KNIGHT, INC., Plaintiff,**

v.

**VMC ENTERPRISES, INC., Defendant.**

No. 06–C–549 C.

United States District Court,
W.D. Wisconsin.

Dec. 7, 2006.

Mark J. Steichen, Boardman, Suhr, Curry & Field, Madison, WI, for Defendant.

## OPINION and ORDER

CRABB, District Judge.

In this civil action governed by the Arizona's "fair dealership" law, Ariz. Stat. § 44–6701, plaintiff Kuhn Knight, Inc. seeks judgment declaring that it may terminate its dealership agreement with defendant VMC Enterprises, Inc. because defendant made late payments on goods it purchased from plaintiff. (Although Wisconsin has a fair dealership law of its own, Wis. Stat. § 135.02(2), the parties agree that it does not govern their business relationship.) Jurisdiction is present under 28 U.S.C. § 1332.

Now before the court is defendant's motion to dismiss plaintiff's case for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2) or, in the alternative, to transfer venue to the United States District Court for the District of Arizona. Defendant contends that its contacts with plaintiff have occurred almost exclusively through plaintiff's regional offices and that its contacts with Wisconsin have been too limited to support this court's exercise of personal jurisdiction over it. Although the case is a close one, defendant has not purposely availed itself of the benefits of Wisconsin law and its contacts with this forum are limited at best. I find that defendant's contacts do not support the exercise of personal jurisdiction; consequently, the motion to dismiss will be granted.

From the facts alleged in the complaint, the exhibits attached to defendant's brief in support of its motion to dismiss and the facts averred in the affidavits submitted by the parties, I find for the sole purpose of deciding this motion that the following facts are undisputed and material. *Purdue Research Foundation v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (court accepts all well-pleaded allegations in complaint as true, unless controverted by challenging party's affidavits; any conflicts concerning relevant facts are to be decided in favor of party asserting jurisdiction).

## JURISDICTIONAL FACTS

### A. *Parties*

Plaintiff Kuhn Knight, Inc. is a Delaware corporation with its principal place of business in Brodhead, Wisconsin. Plaintiff has territorial offices throughout the United States, Mexico and Canada. At its Brodhead plant, plaintiff manufactures farm machinery equipment, which it sells to independent agricultural dealers and distributors.

Defendant VMC Enterprises, Inc. is an Arizona corporation with its principal place of business in Buckeye, Arizona. Defendant is a multi-line farm equipment retailer. It sells products manufactured by plaintiff and other manufacturers. Defendant has never been registered to do business in Wisconsin.

### B. *Dealership Agreement*

In February 2002, one of plaintiff's employees participated in a trade show in Louisville, Kentucky. While there, he met defendant's president, Richard Hammond, who expressed interest in becoming one of plaintiff's dealers. On February 18, 2002, Hammond sent plaintiff a follow-up letter

at its Brodhead, Wisconsin headquarters, reiterating his request.

On October 4, 2002, defendant became an authorized dealer. The relationship between plaintiff and its dealers is governed by specific terms and conditions. One of these terms is contained in Provision 5.4 of the dealer terms, which states:

All units are due and payable immediately upon delivery to a retail customer. Any unit not paid within 10 days of delivery to a retail customer will be considered sold out-of-trust. No volume bonus will be paid on units sold out-of-trust.

.... **Any time a KUHN KNIGHT machine is sold out-of-trust, KUHN KNIGHT will have the right to: (1) refuse further credit or shipment, or (2) terminate the DEALER.**

If a unit is sold out-of-trust and KUHN KNIGHT initiates legal action, the DEALER agrees to pay KUHN KNIGHT'S cost of collection, before and after judgment, including actual attorney's fees.

During the spring and summer of 2006, disputes arose between plaintiff and defendant regarding defendant's alleged failure to pay for products in a timely manner. (These disputes were later resolved.) During this time, plaintiff sent defendant a letter reminding it of its obligations under the dealer terms and of plaintiff's right to terminate defendant as a dealer if defendant made untimely payments. In the same letter, defendant reiterated to defendant its expectation that all communication be directed to plaintiff's territorial representative in Colorado:

As you know, our dealers' primary point of contact is the Kuhn Knight Territory Manager. It is important that our dealers communicate with their Territory Managers so that they are kept apprised of problems and other issues concerning their territories. Dealers who ignore

Territory Managers cause problems not only for themselves, but for Kuhn Knight personnel and ultimately for the customers. That is why it is not acceptable for VMC to ignore or circumvent [its] Territory Manager....

On August 11, 2006, defendant accepted delivery of a model 5185 mixer in Brodhead, Wisconsin. On or before August 23, 2006, the mixer was delivered to one of defendant's retail customers. As of September 14, 2006, plaintiff had not received payment for the mixer from defendant. Plaintiff sent defendant a letter informing it that defendant was "out of trust" under the dealer terms and that plaintiff was opting to terminate its relationship with defendant.

Defendant objected to plaintiff's proposed cancellation of the dealer agreement, and asserted that the check for the mixer had been mailed (an allegation plaintiff believes to be false). Plaintiff received defendant's allegedly backdated check on September 21, 2006.

### C. Wisconsin Contacts

From October 2002 to the present, defendant purchased 26 pieces of farm equipment from plaintiff. Twenty-three of these products were manufactured at plaintiff's Brodhead plant. At times defendant would make arrangements with a third party transportation company or through plaintiff's regional office in Greeley, Colorado, to transport products from Wisconsin to Arizona.

When defendant ordered products from plaintiff, the orders were processed in plaintiff's Wisconsin office. Although plaintiff has directed defendant to mail payments and to direct communication to plaintiff's Colorado office, rather than to its Wisconsin office, defendant has not always done so. On many occasions, defendant's employees would contact plaintiff's Wisconsin employees to inquire about the

status of pending orders, discuss billing and collection and request technical assistance. However, all of defendant's contacts with plaintiff regarding the billing disputes that led up to the filing of this lawsuit were directed to plaintiff's representatives in Colorado.

Defendant does not sell products or service equipment in Wisconsin. Defendant's president traveled to Wisconsin once in 2005 for a dealer convention. That is the only time any employee of defendant has traveled to Wisconsin for business.

## OPINION

▇▇ Personal jurisdiction is "an essential element of the jurisdiction without which the court is 'powerless to proceed to an adjudication' of the merits of a lawsuit." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (citing *Employers Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382, 57 S.Ct. 273, 81 L.Ed. 289 (1937)). When a court is confronted with a motion to dismiss for lack of personal jurisdiction, it has several options. The court may hold an evidentiary hearing at which the plaintiff is required to prove the existence of personal jurisdiction by a preponderance of the evidence or it may rule on the motion "based on the submission of written materials, without the benefit of an evidentiary hearing." *Purdue Research Foundation v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir.2003). If no evidentiary hearing is held, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Id.* In evaluating whether the *prima facie* standard has been satisfied, the plaintiff "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.* In this case, an evidentiary hearing is unnecessary because the facts relevant to the question of personal jurisdiction are largely undisputed.

▇▇ A federal court has personal jurisdiction over a non-consenting, nonresident defendant if a court of the state in which that court sits would have jurisdiction over the lawsuit. *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 664 (7th Cir.1986). Under Wisconsin law, determining whether personal jurisdiction may be exercised requires a two-step inquiry. First, the court must determine whether defendants are subject to jurisdiction under Wis. Stat. § 801.05, Wisconsin's long-arm statute. *Kopke v. A. Hartrodt S.R.L.*, 2001 WI 99, ¶ 8, 245 Wis.2d 396, 629 N.W.2d 662 (2001). Then, if the statutory requirements are satisfied, the court must consider whether the exercise of jurisdiction comports with due process requirements. *Id.* Plaintiff bears the minimal burden of making a *prima facie* showing that constitutional and statutory requirements for the assumption of personal jurisdiction are satisfied. *Id.*

▇▇ Wisconsin's jurisdictional statute, Wis. Stat. § 801.05, authorizes courts in the state to exercise jurisdiction over nonresident defendants in certain specified circumstances. When a defendant requests goods to be shipped to it from Wisconsin, Wis. Stat. § 801.05(5)(d) gives a court personal jurisdiction over any action relating to those goods. In this case, it is undisputed that defendants ordered a mixer from plaintiff in August 2006, and that the parties' present dispute arises out of defendant's alleged failure to pay for the mixer in a timely manner. Therefore, the Wisconsin long arm statute reaches defendant under § 801.05(5)(d).

Finding that defendant's activities come within the reach of the state's long-arm statute is just the first of a two-part inquiry. The second step requires a finding that exercise of jurisdiction over them would not violate their due process rights. *Kopke*, 2001 WI 99, ¶ 8, 245 Wis.2d 396,

629 N.W.2d 662. Personal jurisdiction comes in two forms: specific and general. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Plaintiff contends that this court may exercise specific jurisdiction over defendant because the suit arises out of or is related to defendant's contacts with Wisconsin, which consist of defendant's ongoing dealer relationship with plaintiff. Moreover, plaintiff contends that the court may exercise general jurisdiction over defendant because of its alleged "systematic and continuous" contacts with Wisconsin.

 To establish either general or specific jurisdiction, the court must be able to find that defendant "purposefully established minimum contacts in the forum State," *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), and then consider those contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.* at 476, 105 S.Ct. 2174 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); *Hyatt International Corp. v. Coco,* 302 F.3d 707, 716 (7th Cir.2002). The crucial inquiry is whether the defendant's contacts with the state are such that it should reasonably anticipate being haled into court because it has "purposefully availed itself" of the privilege of conducting activities in the forum state, invoking the benefits and protections of the state's laws. *International Medical Group, Inc. v. American Arbitration Association, Inc.,* 312 F.3d 833, 846 (7th Cir.2002) (citing *Burger King,* 471 U.S. at 474, 105 S.Ct. 2174).

 General jurisdiction exists only when a party has "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 416, 104 S.Ct. 1868. When general jurisdiction exists, a party may be sued in the forum state on any matter, even one unrelated to the party's contacts with the state. *Id.* Because the consequences of finding general jurisdiction are more far-reaching than those flowing from a finding of specific jurisdiction, the constitutional standard for general jurisdiction is considerably more stringent than the standard for specific jurisdiction. *Purdue Research Foundation,* 338 F.3d at 787; *Bancroft & Masters, Inc. v. Augusta National Inc.,* 223 F.3d 1082, 1086 (9th Cir.2000) (general jurisdiction "requires that the defendant's contacts be of the sort that approximate physical presence").

 Specific jurisdiction is established when a lawsuit "arises out of" or is "related to" a party's minimum contacts with the forum state. Requiring a nexus between a party's contacts and the parties' dispute adds a degree of predictability to the legal system by allowing potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit. *Hyatt International Corp.,* 302 F.3d at 716. The reason for this is simple:

> Potential defendants should have some control over—and certainly should not be surprised by—the jurisdictional consequences of their actions. Thus, when conducting business with a forum in one context, potential defendants should not have to wonder whether some aggregation of other past and future contacts will render them liable to suit there.

*Id.*

 A party's contract with an out-of-state litigant does not automatically establish sufficient minimum contacts to support personal jurisdiction in the out-of-state party's home forum. *Burger King Corp.,* 471 U.S. at 478, 105 S.Ct. 2174. However, a contract may be evidence of "prior business negotiations with future

consequences which themselves are the real object of the business transaction." *Id.* at 479, 105 S.Ct. 2174. These "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing ... must be evaluated in determining whether the defendant purposefully established *minimum contacts* within the forum." *Id.*

In this case, due process requirements are not easily satisfied, under the standards for either specific or general personal jurisdiction. First, by agreeing to provide plaintiff's products to Arizona customers, defendant did not "purposefully avail" itself of the privilege of conducting business within Wisconsin or of the benefits of Wisconsin law. Clearly, defendant derived some benefit from its relationship with plaintiff. (Why else would it be seeking to continue the relationship by defending in this lawsuit?) However, the terms of that agreement were not governed by Wisconsin law and did not require defendant to perform any acts in Wisconsin. Defendant's limited contacts with the state occurred through periodic letters and phone calls to plaintiff's Wisconsin headquarters and attendance at one dealership conference. Although these contacts were not themselves insignificant, none of them related to the disputes that form the basis of this case. Most important, plaintiff dissuaded defendant from contacting it in Wisconsin, directing defendant to contact its territorial manager in Colorado with all questions, and to make payments to plaintiff's Colorado office, rather to its Wisconsin headquarters. At plaintiff's behest, all of defendant's communication regarding the allegedly untimely payments that led to the filing of this lawsuit occurred between defendant and plaintiff's territory manager in Colorado.

Plaintiff makes much of the fact that the machinery defendant purchased was manufactured in Wisconsin and the orders defendant placed were processed in this forum. However, courts have been clear in holding that "the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. 2174 (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). Plaintiff is a multinational corporation with processing plants in Wisconsin, Colorado and throughout France. Kuhn Group Network, http:// www.kuhnknight.com/internet/webna.nsf/w Framed/CNEU–5 JFHVG?OpenDocument (last visited December 6, 2006). In the context of a personal jurisdiction analysis, the contacts that matter are those made by defendant, not plaintiff. The fact that plaintiff chose to manufacture the products defendant purchased at its Wisconsin plant was one over which defendant had no control; therefore, it may not be considered a "contact" between defendant and the forum state. The same holds true for the purchase orders plaintiff processed in Wisconsin.

In determining whether it would offend "traditional notions of fair play and substantial justice," *International Shoe*, 326 U.S. at 316, 66 S.Ct. 154, to assert personal jurisdiction over a nonresident defendant, courts consider

> (1) the forum state's interest in adjudicating the dispute; (2) the plaintiff's interest in obtaining convenient and effective relief; (3) the burden on the defendant; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and, (5) the shared interest of the several States in furthering fundamental substantive social policies.

*Kopke*, 2001 WI 99, ¶ 39, 245 Wis.2d at 427, 629 N.W.2d at 677 (citing *Asahi Metal Industry v. Superior Court of California*,

480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Although the state of Wisconsin has a general interest in providing its citizens with a forum in which to adjudicate their claims, Wisconsin has no particular stake in the adjudication of plaintiff's claims, which are governed by Arizona law. Although this court would be capable of applying Arizona law in a diversity case, the fact that foreign law governs this dispute is a factor that weighs against the exercise of personal jurisdiction.

The remaining factors to be considered do not favor either party. Plaintiff would be no more burdened by litigating its case in Arizona than defendant would be litigating its case in this forum. There is no reason to believe that the court's decision whether to exercise personal jurisdiction over defendant would have any effect on the interstate judicial system's interest in obtaining the efficient resolution of controversies or the shared interest of the states in furthering fundamental substantive social policies.

In short, there are few reasons to exercise personal jurisdiction over defendant and many reasons to question whether it would be proper to do so. Because I find that defendant's contacts with this state are too attenuated to give rise to personal jurisdiction in this forum, defendant's motion to dismiss under Fed.R.Civ.P. 12(b)(2) will be granted.

### ORDER

IT IS ORDERED that the motion to dismiss of defendant VMC Enterprises, Inc. is GRANTED and this case is DISMISSED for lack of personal jurisdiction.