**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

LONG TERM CARE PARTNERS, LLC,
                    *Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,
                    *Defendant-Appellee,*

and

RALPH ROUSE,

                            *Defendant.*

No. 06-1930

LONG TERM CARE PARTNERS, LLC,
                    *Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,
                    *Defendant-Appellee,*

and

RALPH ROUSE,

                            *Defendant.*

No. 07-1098

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, District Judge.
(1:06-cv-00475-JFM)

Argued: September 27, 2007

Decided: February 5, 2008

Before WILLIAMS, Chief Judge, DUNCAN, Circuit Judge,
and Raymond A. JACKSON, United States District Judge for the
Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge Duncan wrote the opinion, in which Judge Jackson joined. Chief Judge Williams wrote a separate opinion concurring in part and dissenting in part and concurring in the judgment.

---

**COUNSEL**

**ARGUED:** Anthony F. Shelley, MILLER & CHEVALIER, CHARTERED, Washington, D.C., for Appellant. Matthew Miles Collette, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Alan I. Horowitz, MILLER & CHEVALIER, CHARTERED, Washington, D.C., for Appellant. Peter D. Keisler, Assistant Attorney General, Rod J. Rosenstein, United States Attorney, Marleigh D. Dover, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

**OPINION**

DUNCAN, Circuit Judge:

Long Term Care Partners, LLC ("LTC Partners") challenges the assumption of jurisdiction by the Equal Employment Opportunity Commission ("EEOC" or "Commission") over actions brought by federal employees against the Office of Personnel Management ("OPM") arising from OPM's participation in an allegedly discriminatory contract with LTC Partners. The district court dismissed LTC Partners' claim, holding that the limited exception to the finality requirement for review of administrative agency action outlined in *Leedom v. Kyne*, 358 U.S. 184 (1958), did not apply. We agree and therefore affirm.

I.

Congress enacted the Long-Term Care Security Act ("LTCSA"), 5 U.S.C. §§ 9001-9009, to provide long-term care insurance to eligible individuals, including federal employees, their qualified relatives, and annuitants. OPM effectuated the mandate of the LTCSA by establish-

ing the Federal Long Term Care Insurance Program ("Program"), 5 C.F.R. pt. 875, contracting thereunder with "qualified carriers" for the provision of long-term care insurance, and regulating certain aspects of the insurers' operations. *See* §§ 9001-9003, 9008. Under the Program, OPM and a qualified carrier enter into a "master contract" that delineates the benefits, premiums and other terms and conditions of the insurance policies issued by the carrier. § 9003.

The Program does not provide universal coverage. § 9002(e)(3). Instead, each individual must apply for coverage using a form prescribed by the carrier and approved by OPM. 5 C.F.R. § 875.401(a). The carrier has discretion, within the limits set forth in the master contract, to accept or reject applications. 5 U.S.C. § 9003(c); 5 C.F.R. § 875.407.[1] The carrier's eligibility determinations are subject to review "only to the extent and in the manner provided in the applicable master contract." 5 U.S.C. § 9003(c)(2). Notwithstanding this, a limited right to judicial review of the carrier's eligibility determinations exists, provided the applicant has exhausted the administrative remedies set forth in the master contract. 5 U.S.C. § 9007. Unlike the role of the carrier, OPM's role in the administration of the Program is limited. 5 C.F.R. §§ 875.106, .107. OPM does not make insurability decisions, and the regulations prohibit applicants from appealing carriers' insurability decisions to OPM. 5 C.F.R. § 875.407.

Pursuant to its authority under the LTCSA, OPM entered into a master contract with LTC Partners, a consortium created by John Hancock Life Insurance Company and Metropolitan Life Insurance Company.[2] The master contract sets forth LTC Partners' internal administrative appeals process as the only avenue for appeal of an insurability determination. An applicant denied coverage can submit the denial letter to his or her physician, who in turn can respond in writing to the specific bases for the denial. Upon receipt of a physician's letter, LTC Partners' underwriting staff reconsiders the original denial and issues a second decision. An applicant denied coverage at this stage can obtain an additional de novo review within LTC Partners.[3]

---

[1] Covered employees are responsible for the entire cost of insurance, unsubsidized by the government. § 9004(a).

[2] LTC Partners is the only qualified carrier under the LTCSA.

[3] The Director of Underwriting for LTC Partners described this review as follows: "Should the original underwriting decision be upheld, the

Following exhaustion of these administrative remedies, a still-aggrieved applicant may file suit against the carrier in federal district court.

In July 2002, Ralph D. Rouse, Jr., a federal employee, submitted an application for insurance to LTC Partners. The application form, designed by LTC Partners and approved by OPM, required applicants to indicate whether they used "medical devices, aids, or treatments," and listed wheelchairs as a specific example. J.A. 256. The form stated that an affirmative response to the "medical devices, aids, or treatments" question would render the applicant ineligible for coverage. Rouse, a paraplegic who used a wheelchair, responded to the question in the affirmative. Accordingly, LTC Partners denied Rouse coverage based on his use of a wheelchair, J.A. 263-64, and upheld the denial on reconsideration, J.A. 268.[4] Instead of filing a complaint against the carrier in federal district court, as was his right under 5 U.S.C. § 9007, Rouse filed a formal EEOC administrative complaint against OPM as the agency administering the Program. In his complaint, Rouse alleged that OPM's contractual arrangement with LTC Partners, under which Rouse was denied long-term care insurance coverage, constituted unlawful discrimination by the agency.

In proceedings before an EEOC Administrative Law Judge ("ALJ"), OPM argued that Rouse's complaint should be dismissed because the EEOC did not have jurisdiction to review LTC Partners' insurability decision. The ALJ rejected this argument, finding that it "confuse[d] jurisdiction under the Americans with Disabilities Act (ADA) with eligibility determinations under the LTCSA" and holding

---

applicant may request a second, and final reconsideration review. A senior level/supervisory underwriter or a Medical Director at John Hancock or MetLife reviews that decision. The individuals reviewing the second level reconsideration, while knowledgeable of the underwriting protocols for the [Program], have no involvement with the initial or subsequent denial and act as independent reviewers." J.A. 24-25.

[4]Rouse's claim did not involve a dispute over medical judgments. Therefore, the second-level review, including review of records by Rouse's physician and subsequent reconsideration by LTC Partners' underwriting staff, was unavailable in Rouse's case.

that "the Commission has jurisdiction under the ADA to determine whether OPM has participated in a contract which makes disability-based distinctions in the eligibility requirements of its insurance plan." *Rouse v. Director, Office of Personnel Management*, Case No. 100-2005-00025X (E.E.O.C. October 27, 2005) (order denying OPM's motion to dismiss); J.A. 106-07. Under relevant sections of the ADA, OPM is prohibited from

> participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter (such relationship includes a relationship with an employment or referral agency, labor union, an organization providing fringe benefits to an employee of the covered entity, or an organization providing training and apprenticeship programs)[.]

42 U.S.C. § 12112(b)(2). The EEOC had jurisdiction to determine whether OPM discriminated against Rouse under this section of the ADA, the ALJ determined, despite the limitations on review of LTC Partners' insurability decisions set forth in the LTCSA and the master contract.[5]

In two subsequent appeals, the EEOC has reinforced its view of the limited extent to which it may exercise jurisdiction in cases like *Rouse. See Fornaro v. Blair*, E.E.O.C. Doc. 01A53949, 2005 WL 3038227 (November 2, 2005), *recons. denied sub nom. Fornaro v. Springer*, E.E.O.C. Doc. 0520060303, 2007 WL 1661122 (May 24, 2007); *James v. Springer*, E.E.O.C. Doc. 0120054026, 2007 WL 1393631 (May 3, 2007); *recons. denied*, E.E.O.C. Doc. 0520070615, 2007 WL 2416692 (August 16, 2007). In each of these cases, the EEOC's Office of Federal Operations ("OFO") rejected OPM's argument that the aggrieved Program applicant's complaint was an impermissible collateral attack on an unfavorable insurance decision. In

---

[5]The underlying substantive questions—whether long-term care insurance is a fringe benefit; whether denial of insurance coverage concerns a term, condition, or privilege of employment; and whether the master contract subjects federal employees to the discrimination prohibited by the ADA—are not before us.

doing so, the OFO distinguished between challenges to individual coverage determinations and the propriety of the overarching contract as articulated by the statute: "Congress intended that contractual relationships of a covered employer be scrutinized for whether they discriminate against its employees who are individuals with disabilities within the meaning of the law." *James*, 2007 WL 1393631, at *3; *see also Fornaro*, 2005 WL 3038227, at *2. The OFO found "no indication in [the] language or in the legislative history [of the LTCSA] that Congress intended to authorize OPM to dispense with its non-discriminatory obligations under civil rights statutes." *James*, 2007 WL 1393631, at *4; *see also Fornaro*, 2005 WL 3038227, at *2. The OFO found that "OPM, in its contractual relationship with [LTC Partners] for the provision of this insurance, is the proper party responsible for ensuring that its contract adheres to non-discrimination statutes." *James*, 2007 WL 1393631, at *4. Finding EEOC jurisdiction appropriate in each case, the OFO remanded the claims for processing by the agency.[6]

On February 23, 2006, LTC Partners filed suit against the United States in federal district court. The complaint, as later amended, alleged that the EEOC had asserted jurisdiction over LTC Partners' insurability decisions in contravention of the LTCSA and its implementing regulations. LTC Partners sought (1) a declaration that the EEOC was without jurisdiction to review insurability decisions made under the Program, and (2) a permanent injunction preventing the EEOC from asserting such jurisdiction.[7] The district court dismissed LTC Partners' challenge to the EEOC's assertion of jurisdiction, holding that the decision to entertain such matters was not "final

---

[6]At the time of oral argument in this case, both *Fornaro* and *James* remained pending before OPM.

[7]LTC Partners also moved to enjoin proceedings in *Rouse* and sought an order compelling the EEOC to permit LTC Partners to intervene in those proceedings. The district court ultimately granted LTC Partners' requested permission to intervene. Rouse subsequently abandoned his EEOC claim and sought relief against OPM in federal district court, later adding LTC Partners as a party to that action. *Rouse v. Springer*, No. 06-2088 (D.D.C. filed Dec. 8, 2006). LTC Partners has not sought to intervene in the ongoing proceedings in *Fornaro* or *James*.

agency action" under the Administrative Procedure Act ("APA") and did not fit the limited finality exception outlined in *Leedom*.[8]

II.

On appeal, the government first contends that LTC Partners lacks standing to challenge the EEOC's exercise of jurisdiction over its contractual partner, OPM. The district court did not reach this issue. However, standing implicates this court's subject matter jurisdiction, and it may therefore be appropriately considered on appeal. Fed. R. Civ. P. 12(h)(3); *see Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 548-49 (4th Cir. 2006). To satisfy the standing requirement of the case-or-controversy limitation on judicial authority found in Article III, Section 2 of the Constitution, the party invoking federal court jurisdiction must show that (1) it has suffered an injury in fact, (2) the injury is fairly traceable to the defendants' actions, and (3) it is likely, and not merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000) (en banc). To meet the first requirement, the party must demonstrate an "injury in fact" that is concrete and particularized, and actual or imminent, as opposed to conjectural or hypothetical. *Lujan*, 504 U.S. at 560-61. "The standing requirement is designed to guarantee that the plaintiff has a sufficient personal stake in the outcome of a dispute to render judicial resolution of it appropriate." *Emery v. Roanoke City Sch. Bd.*, 432 F.3d 294, 298 (4th Cir. 2005) (internal quotations omitted).

---

[8]At the district court's behest, LTC Partners then filed a second amended complaint, reasserting its original challenge to EEOC jurisdiction and adding a new claim seeking declaratory judgments (1) that denials of coverage to wheelchair users under the Program did not violate the ADA or any other provision of law, and (2) that LTC Partners' rejection of Rouse's application was valid and lawful. The court dismissed the new claim as it pertained to the United States for lack of subject matter jurisdiction, concluding there was no indication that LTC Partners and the United States, as contractual partners, maintained adverse interests as to the claim. The dismissal of the new claim in the second amended complaint has not been appealed.

LTC Partners claims injury based on the EEOC's exercise of jurisdiction over its contractual partner, OPM. LTC Partners argues that this exercise of jurisdiction guts its right to enjoy the limitations on review imposed by the LTCSA; forces it to expend resources on administrative litigation whether or not it is a party to the proceedings; and imperils the contract through the threat of an adverse ruling on the merits against OPM in the pending EEOC actions. The government responds by noting that EEOC decisions on the merits in *Fornaro* and *James* would operate *only* against OPM, arguing that any projected downstream effects of such rulings on LTC Partners are too conjectural or hypothetical to confer Article III standing.[9]

Notwithstanding the government's invocation of standing concerns, we decline, as did the district court, to decide this case on standing grounds. This court previously determined that analysis of whether a case presents "final agency action" should precede a standing inquiry. *Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA*, 313 F.3d 852, 857 (4th Cir. 2002). We reasoned that the doctrine of constitutional avoidance requires us to eschew determinations of Article III standing, a constitutional question, in cases in which a statutory jurisdictional inquiry could dictate the result. *Id.* (citing *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concur-

---

[9]It is also open to question whether LTC Partners could satisfy the redressibility requirement of Article III standing. Here, LTC Partners sought a declaration from the district court that "the EEOC'[s] assertion of jurisdiction to review insurability decisions made by LTC Partners is void as in excess of EEOC's statutory jurisdiction and authority," and a related injunction on the exercise of such jurisdiction. J.A. 94. But the EEOC explicitly acknowledged in *Fornaro* and *James* its lack of authority to review insurability decisions. *See Fornaro*, 2005 WL 3038227, at *2 ("This is not to say that the Commission may overturn a decision strictly concerning an individual's 'insurability.' Such decisions are within the discretion of the insurer and fall within the protective provisions of the ADA for insurance providers set aside by Congress."). Therefore, unless the EEOC cannot avoid exercising jurisdiction over LTC Partners' insurability decisions when it examines OPM's participation in the master contract, a favorable decision here would have no effect on the EEOC's authority to hear cases like *Fornaro* and *James*. We analyze this issue in connection with LTC Partners' *Leedom* argument, *infra* Part III.A.

ring) ("It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.") (internal quotations omitted)).

The continued validity of this portion of the decision in *Flue-Cured Tobacco* has been called into question somewhat by *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006). In *Arbaugh*, the Supreme Court considered the provision of Title VII limiting its applicability to businesses over a certain size. *Id.* at 504-05 (citing 42 U.S.C. § 2000e(b) (defining "employer" to include only those entities having "fifteen or more employees")). The district court had determined, after trial, and on the employer's motion, that it lacked subject matter jurisdiction because the defendant employed fewer than fifteen employees, and consequently dismissed the case. The Fifth Circuit affirmed. The Supreme Court reversed, noting that the statutory provision at issue did not speak in jurisdictional terms, and concluding that the factual issue of whether the defendant had fifteen or more employees was not a jurisdictional limitation but an element of the claim for relief. *Id.* at 513-16. The Court explained, "[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 516. *Cf. Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 338-39 (4th Cir. 2006) (applying *Arbaugh* and finding that the district court properly exercised jurisdiction in a case involving alleged violations of the Securities Act of 1933).

Relying on *Arbaugh*, the Court of Appeals for the District of Columbia has held that the requirement of final agency action under section 10(c) of the APA, 5 U.S.C. § 704, is not jurisdictional. *Trudeau v. FTC*, 456 F.3d 178, 183-84 & nn. 6-7 (D.C. Cir. 2006); *see also Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18, 33 (1st Cir. 2007) (reaffirming the court's pre-*Arbaugh* determination that the APA's finality requirement is not jurisdictional). We assume without deciding that the *Arbaugh* rule applies equally to statutory "final agency action" under the APA and non-statutory inquiries under *Leedom*, rendering both nonjurisdictional.

Nevertheless, the Supreme Court recently clarified, relying on *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 100-101, n.3 (1998), and *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585

(1999), that "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1191 (2007) (internal quotations omitted). "[J]urisdiction is vital only if the court proposes to issue a judgment on the merits." *Id.* at 1191-92 (alteration in original) (internal quotations omitted). In *Sinochem*, the Court determined that a federal court could properly dismiss a case under the *forum non conveniens* doctrine without first resolving the threshold jurisdictional issues. The Court reasoned that a *forum non conveniens* dismissal might be appropriate, notwithstanding the presence of unresolved jurisdictional issues, because such a dismissal "den[ies] audience to a case on the merits" and "is a determination that the merits should be adjudicated elsewhere." *Id.* at 1192 (alteration in original) (internal quotations omitted). The Court listed by way of example other legal issues that could also be addressed without first deciding whether a case presented an Article III case or controversy. *Id.* at 1191 (pointing to abstention under *Younger v. Harris*, 401 U.S. 37 (1971), and dismissal of certain suits against the government under *Totten v. United States*, 92 U.S. 105 (1876)).

Thus, under *Sinochem*, it is of no moment whether *Arbaugh* renders our *Leedom* inquiry nonjurisdictional. Our *Leedom* analysis requires no more than "a brush with factual and legal issues of the underlying dispute" and "does not entail any assumption by the court of substantive law-declaring power." *Sinochem*, 127 S. Ct. at 1192-93 (internal quotations omitted). Our consideration of *Leedom*, *infra*, weighs heavily in favor of dismissal, whereas the standing issue here would be difficult to resolve. Under these circumstances, *Sinochem* counsels us to "take[ ] the less burdensome course," 127 S. Ct. at 1194, and decide the case on *Leedom* grounds without first surmounting the jurisdictional hurdle of standing. *See Ashwander*, 297 U.S. at 347 (Brandeis, J., concurring) ("It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.") (internal quotations omitted). We therefore decide this case on the basis of our analysis of LTC Partners' *Leedom* argument, to which we now turn.

### III.

Judicial review under the APA is limited to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.[10] In *Leedom*, the Supreme Court recognized a nonstatutory exception to the § 704 finality requirement in cases in which agencies act outside the scope of their delegated powers and contrary to "clear and mandatory" statutory prohibitions. 358 U.S. at 188-90. The finality exception in *Leedom* is limited; it is properly invoked only where the absence of federal court jurisdiction over an agency action "would wholly deprive" the aggrieved party "of a meaningful and adequate means of vindicating its statutory rights." *Bd. of Governors, Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991).

LTC Partners claims that this case fits both criteria for exercise of *Leedom* jurisdiction and that the district court erred by holding otherwise. First, LTC Partners argues that the EEOC, in exercising jurisdiction in *Rouse*, *Fornaro*, and *James*, acted contrary to the LTCSA's clear and mandatory prohibition of review of carriers' eligibility determinations except "to the extent and in the manner provided in the applicable master contract." 5 U.S.C. § 9003(c)(2). LTC Partners asserts that the second *Leedom* requirement is also met in this case because it has no meaningful and adequate means, apart from this litigation, of vindicating its perceived right under § 9003 and the master contract not to be forced to defend its insurability decisions before the EEOC. *See MCorp*, 502 U.S. at 43. We review de novo the district court's dismissal of this claim. *Suter v. United States*, 441 F.3d 306, 310 (4th Cir. 2006).

### A.

We begin by examining LTC Partners' argument that the EEOC acted contrary to a clear and mandatory requirement in the LTCSA. In *Leedom*, the Supreme Court construed a statute dealing with the certification of collective bargaining units by the National Labor Relations Board ("NLRB"). The statute provided that the NLRB "shall not . . . decide that any unit is appropriate for [collective bar-

---

[10]Though not relevant here, the APA also provides that a court may review agency action made reviewable by statute. § 704.

gaining] purposes if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit." *Leedom*, 358 U.S. at 184-85 (citing National Labor Relations Act § 9(b)(1), 29 U.S.C. § 159(b)(1)). In spite of this prohibition, the NLRB issued an order certifying a unit for collective bargaining purposes that included both professional and non-professional employees, without obtaining the professional employees' consent. *Id.* at 186. The Court held that the Board had acted "in excess of its delegated powers and contrary to a specific prohibition in the Act" that was "clear and mandatory," stating that such action was "[p]lainly . . . an attempted exercise of power that had been specifically withheld." *Id.* at 188-89. Under those circumstances, the Court held, the district court had jurisdiction to entertain the suit. *Id.* at 190-91 ("This Court cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers.").

The Supreme Court has since reinforced the "narrow limits" of *Leedom*. *See Boire v. Greyhound Corp.*, 376 U.S. 473, 481 (1964). We have therefore construed the exception accordingly, finding *Leedom* jurisdiction appropriate only where there is a "strong and clear demonstration that a clear, specific and mandatory [statutory provision] has been violated." *Newport News Shipbuilding and Dry Dock Co. v. NLRB*, 633 F.2d 1079, 1081 (4th Cir. 1980) (internal quotations omitted). When a party invokes *Leedom* as the basis for this court's jurisdiction, we conduct a "cursory review of the merits" to determine if the agency acted "clearly beyond the boundaries of its authority." *Champion Int'l Corp. v. EPA*, 850 F.2d 182, 186 (4th Cir. 1988). If the agency offered a "plausible" interpretation of the relevant statute, we will find that it did not "violate a clear statutory mandate," *Hanauer v. Reich*, 82 F.3d 1304, 1311 (4th Cir. 1996), and *Leedom* jurisdiction will not lie. *See also Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1264 (D.C. Cir. 2006) (holding, where both parties on appeal "raised compelling arguments regarding the proper interpretation of the disputed statutory provisions," that it was precisely this fact that compelled the court to find that there had been no violation of a clear and specific statutory directive).

In this case, the statute provides, "A carrier's determination as to whether or not a particular individual is eligible to obtain long-term care insurance coverage under this chapter shall be subject to review only to the extent and in the manner provided in the applicable master contract." 5 U.S.C. § 9003(c)(2). LTC Partners argues that in exercising jurisdiction over cases brought by federal employees aggrieved by LTC Partners' eligibility determinations, the EEOC violated the clear, specific, and mandatory prohibition of 5 U.S.C. § 9003. *See id.* ("A carrier's [eligibility] determination[s] . . . *shall* be subject to review *only* [as] provided in the applicable master contract.") (emphasis added). There is no serious dispute about the mandatory nature of this provision or that it is specific and clear as it pertains to carriers' eligibility determinations. The EEOC has repeatedly drawn a line, however, between review of carriers' eligibility determinations and scrutiny of OPM's participation in a contractual relationship that has the alleged effect of discriminating against federal employees. The question before us is whether the distinction drawn by the agency is a reasonable one. In deciding it, we need not reach the ultimate merits of the EEOC's position. Rather, our *Leedom* inquiry is aimed at the more basic question of whether there is a "strong and clear demonstration" of a violation of a clear, specific and mandatory statutory provision, or whether the agency's view, while perhaps not compelling beyond cavil, is nevertheless "plausible." *Newport News*, 633 F.2d at 1081 (internal quotations omitted).

*Rouse*, *Fornaro*, and *James* reflect the EEOC's determination that although § 9003 clearly and specifically prohibits review of LTC Partners' eligibility determinations, it does nothing to inhibit EEOC review of OPM's participation in allegedly discriminatory contractual relationships. The EEOC OFO has espoused the view that the latter inquiry is governed by the ADA, 42 U.S.C. § 12112(b)(2), and is unaffected by the specific prohibition in the LTCSA, 5 U.S.C. § 9003(c)(2). To hold otherwise, the OFO found, "would be to allow [OPM] to potentially enter into any contract term which violates federal law or discriminates against whole groups of individuals on the basis of their protected class." *Fornaro*, 2005 WL 3038227, at *2.

LTC Partners argues in response that review of its eligibility decisions and scrutiny of the master-contract terms require the same ultimate inquiry: whether a claimant was subjected to discrimination

based on disability when he was denied coverage under the Program. According to LTC Partners, this broad inquiry and all of its component parts are foreclosed to anyone but LTC Partners under the LTCSA, 5 U.S.C. § 9003(c)(2). By asserting jurisdiction to review OPM's participation in the master contract, LTC Partners concludes, the EEOC *is* engaging in the prohibited act of reviewing its insurability determinations.

This argument is severely undercut by provisions of the ADA protecting insurers' risk-based eligibility judgments. Such judgments are insulated from scrutiny so long as they are not "used as a subterfuge to evade the purposes of [the ADA]." 42 U.S.C. § 12201(c). The OFO has recognized that these statutory provisions render the EEOC powerless to overturn insurers' decisions "strictly concerning an individual's 'insurability.'" *Fornaro*, 2005 WL 3038227, at *2. However, a separate ADA provision governs agency discrimination via participation in suspect contractual relationships. *See* 42 U.S.C. § 12112(b)(2). Because the line drawn by the OFO parallels and arises in part from a delineation in the United States Code, it would be difficult to conclude that the distinction between review of insurability decisions and scrutiny of an agency's contractual relationships is simply the wayward creation of a self-aggrandizing administrative agency.

The court below found merit in the EEOC's distinction between review of an individual eligibility determination and what the court characterized as the "macro issue" in the case—review of OPM's participation in an allegedly discriminatory contractual relationship. As a result, the court concluded that the record before it contained no clear indication that the EEOC had acted beyond its jurisdiction.

We agree with the conclusion urged by the government and reached by the district court. The distinction drawn in the EEOC cases may not be compelled, but it is certainly a "plausible" one, reached upon sound analysis after thorough inquiry, and grounded in the language of the ADA. *See Hanauer*, 82 F.3d at 1311. The provision relied on by LTC Partners clearly prohibits the EEOC's direct review of LTC Partners' eligibility determination in an individual case. *See* 5 U.S.C. § 9003(c)(2). Indeed, the EEOC recognized as much in *Rouse*, *Fornaro*, and *James*. But § 9003(c)(2), by its terms, does not directly prohibit review of OPM's actions under the Program or of

any action broader in scope than a determination as to a particular individual's eligibility for coverage under the LTCSA. Faced with the challenge to its jurisdiction leveled by OPM in *Rouse*, *Fornaro*, and *James*, the EEOC offered a reasoned explanation of its assertion of jurisdiction, highlighting its responsibility to police OPM's actions under the ADA, 42 U.S.C. § 12112, which it found undisrupted by the LTCSA, 5 U.S.C. § 9003(c)(2), which in turn concerns only eligibility determinations. Under these circumstances, we find that the record does not contain a "strong and clear demonstration" of a violation of a clear, specific and mandatory statutory provision. *See Newport News*, 633 F.2d at 1081.

## B.

Even if we were to reach a contrary conclusion, LTC Partners could not show that the EEOC's exercise of jurisdiction in *Rouse*, *Fornaro*, and *James* "wholly deprive[d] [LTC Partners] of a meaningful and adequate means of vindicating its statutory rights," *MCorp*, 502 U.S. at 43. That is, LTC Partners could not satisfy the second condition for *Leedom* jurisdiction to lie.

LTC Partners claims the EEOC's assertion of jurisdiction in proceedings like *Fornaro* and *James* threatens to sacrifice or obliterate its statutory right to enjoy limitations on review of its insurability determinations under the LTCSA. *See Leedom*, 358 U.S. at 190. LTC Partners argues that the EEOC's action, if left unchecked, would divest LTC Partners of its right under the LTCSA to have its insurability decisions not made the subject of any EEOC proceeding, whether brought against LTC Partners or its contractual partner, OPM. In presenting this argument, LTC Partners analogizes its right to the right of a sovereign to immunity from suit. *See R.I. Dep't of Envtl. Mgmt. v. United States*, 304 F.3d 31, 42 (1st Cir. 2002) (finding that an adverse immunity determination would "wholly deprive the [state] of a meaningful and adequate means of vindicating its . . . rights.") (omission in original). "Since the state's sovereign rights encompass more than a mere defense from liability—they include an immunity from being haled before a tribunal by private parties—those rights would be lost without an early and authoritative ruling." *Id.* at 43 (citing *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145 (1993)).

LTC Partners' argument is both overbroad and fraught with complications. First, as discussed at length *supra*, the so-called "immunity" granted to "[a] carrier's determination as to whether or not a particular individual is eligible to obtain long-term care insurance coverage," § 9003(c)(2), may or may not also attach to the EEOC's review of OPM's participation in a contractual arrangement that has the alleged effect of subjecting federal employees to discrimination. Moreover, LTC Partners' "immunity" argument suffers from the obvious deficiency that LTC Partners is a private party and not a sovereign entity. This case presents neither the constitutional scope inherent in the sovereign immunity doctrine nor its rationale of shielding the sovereign from "the indignity of [being] subject[ed] . . . to the coercive process of judicial tribunals at the instance of private parties," *In re Ayers*, 123 U.S. 443, 505 (1887). LTC Partners' analogy also fails logically in likening the insulation of an *entity* (the sovereign) from suit to the insulation of a *category of decisions* (eligibility determinations) from review. For these reasons, LTC Partners' claim also fails to satisfy the second requirement for *Leedom* jurisdiction.[11]

IV.

LTC Partners argues, in the alternative, that the EEOC's exercise of jurisdiction in *Rouse*, *Fornaro*, and *James* is final agency action under the APA. However, "[q]uestions not raised and properly preserved in the trial forum will not be noticed on appeal, in the absence

---

[11]LTC Partners also analogizes to the qualified immunity doctrine. This analogy fails for similar reasons. *See Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985) (describing public service-focused rationale for qualified immunity doctrine). Moreover, we note that LTC Partners is actively engaged in defense of the master contract in federal district court. *Rouse v. Springer*, No. 06-2088 (D.D.C. filed Dec. 8, 2006). We recognize that *Rouse* does not provide an opportunity for LTC Partners to contest the EEOC's assertion of jurisdiction, and that it therefore will not allow LTC Partners to meaningfully assert its purported right to enjoy limitations on review of its eligibility determinations under the LTCSA. However, LTC Partners' participation in *Rouse*, along with the past granting of its request to intervene in the *Rouse* EEOC proceeding, casts doubt upon any suggestion that the proceedings in *Fornaro* and *James* deprive LTC Partners of an adequate forum in which to defend its substantive interests under the master contract.

of exceptional circumstances." *United States v. One 1971 Mercedes Benz*, 542 F.2d 912, 915 (4th Cir. 1976). LTC Partners concedes that it based its case before the district court solely on *Leedom* but argues that this narrowness of focus should not limit it on appeal, citing the "change in the complexion of the case" over the course of time. Reply Br. at 18. Specifically, LTC Partners draws our attention to the fact that after Rouse abandoned his EEOC claim, this case no longer concerned an attempt to enjoin the *Rouse* proceedings but instead shifted to a singular focus on enjoining the EEOC's exercise of jurisdiction over LTC Partners' insurability decisions in general.[12]

All of the ingredients for LTC Partners' generalized claim—that the EEOC acted outside its jurisdiction in hearing *Rouse*, *Fornaro*, and *James*—were presented in LTC Partners' first amended complaint. J.A. 91 ("EEOC's action in asserting jurisdiction to review LTC Partners' insurability decisions and the related proceedings are outside its authority, arbitrary, capricious, an abuse of discretion, and otherwise . . . in violation of the [APA][.]"). However, LTC Partners disavowed this claim in the proceedings below, labeling it a "straw-man argument" offered by the government, Pl.'s Opp. Mot. Dismiss at 9, calling discussion of it "beside the point," *id.*, and acquiescing in the court's suggestion at the hearing that both parties agreed they were not dealing with a final agency decision, J.A. 182. That LTC Partners chose not to present the APA argument to the district court, instead disclaiming the argument and training the court's sights solely on *Leedom*, was a matter of strategy. A mid-litigation change in strategy cannot alone amount to an exceptional or extraordinary circumstance that might nullify waiver and justify review.[13]

---

[12]This question is kept alive through the ongoing proceedings in *Fornaro* and *James*.

[13]In any event, "final agency action" here would necessarily entail the agency's issuance of a definitive ruling that had some immediate "legal force or practical effect" on LTC Partners other than "the disruptions that accompany any major litigation." *FTC v. Standard Oil Co.*, 449 U.S. 232, 243 (1980); *see also Eastman Kodak Co. v. Mossinghoff*, 704 F.2d 1319, 1322 (4th Cir. 1983); *Fort Sumter Tours, Inc. v. Andrus*, 564 F.2d 1119, 1123 (4th Cir. 1977). Both *Fort Sumter Tours* and *Athlone Indus., Inc. v. Consumer Prod. Safety Comm'n*, 707 F.2d 1485 (D.C. Cir. 1983), the primary cases relied upon by LTC Partners, involved agency deci-

## V.

For the foregoing reasons, we affirm the district court's holding that the *Leedom* exception to the finality requirement for review of agency action did not apply in this case. The district court's grant of the government's motion to dismiss is therefore

*AFFIRMED.*

WILLIAMS, Chief Judge, concurring in part and dissenting in part and concurring in the judgment:

I join in full in Parts I, III.B, and IV of the majority opinion and, accordingly, I concur in the result reached in Part V, affirming the dismissal of the complaint by Long Term Care Partners, LLC ("LTC Partners"). I write separately, however, because I believe that, in light of *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), "final agency action" under § 704 of the Administrative Procedure Act ("APA") is not a prerequisite for us to exercise subject matter jurisdiction. Accordingly, I do not believe we may proceed to consider whether LTC Partners has met its burden under *Leedom v. Kyne*, 358 U.S. 184 (1958), without first considering whether LTC Partners possesses standing to bring this action.

Instead, I would first consider that question and answer it in the affirmative. Furthermore, I believe that LTC Partners has met its burden of proving that the Equal Employment Opportunity Commission ("EEOC") is violating a clear statutory mandate, in satisfaction of

---

sions that indisputably had direct and immediate legal force and practical effect on the plaintiffs. Here, as already noted, the immediate impact of the EEOC's jurisdictional decision on LTC Partners is, at best, tenuous. It is difficult to see how EEOC's assertion of jurisdiction over OPM, even with the alleged obliteration of LTC Partners' statutory right, has any tangible, immediate effect on LTC Partners, aside from the disruptions attending whatever participation is required of it in the EEOC proceedings. The "chilling effect" of the EEOC's action on LTC Partners' administration of the Program, *see* Appellant's Br. at 52; Reply Br. at 21, would be too amorphous to carry much weight in an APA analysis.

*Leedom*'s first prong. I concur in the judgment of the court, however, because I agree with the conclusion, reached in Part III.B, that LTC Partners cannot show our failure to act in this case "would wholly deprive" it "of a meaningful and adequate means of vindicating its statutory rights." *Bd. of Governors, Fed. Reserve Sys. v. MCorp. Fin., Inc.*, 502 U.S. 32, 43 (1991).

## I.

## A.

In *Flue-Cured Tobacco Coop. Stabilization Corp. v. E.P.A.*, 313 F.3d 852 (4th Cir. 2002), we held that, absent final agency action under § 704, we lacked subject matter jurisdiction over challenges to an agency's decision making. *Id.* at 857. Importantly, we also answered that question before addressing what we perceived to be a thorny standing question in that case. *Id.* Following this approach, the majority declines to answer whether LTC Partners has standing and instead rests its decision on the ground that the EEOC's actions do not represent "final agency action," and that LTC Partners failed to prove its entitlement to the *Leedom* exception to the APA's finality requirement.

*Flue-Cured Tobacco* entered us into a circuit-split at the time it was decided, *see Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) (holding that where "judicial review is sought under the APA rather than a particular statute prescribing judicial review, the requirement of final agency action is not jurisdictional"); *R.I. Dep't of Envtl. Mgmt. v. United States*, 304 F.3d 31, 40 (1st Cir. 2002) ("[T]he issue of whether the APA provides for judicial review of the nonfinal ruling is not one that, precisely speaking, implicates the subject-matter jurisdiction of the court."), and, in light of recent Supreme Court precedent, our side of that circuit-split is no longer defensible. In *Arbaugh*, the Court created a bright-line rule for analyzing whether a statutory provision implicates our subject matter jurisdiction:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to

wrestle with the issue. . . . But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Arbaugh*, 546 U.S. at 515-16 (internal citation omitted).

The Court then applied its "readily administrable bright line" to find that the numerosity requirements in Title VII were not jurisdictional but "an element of a plaintiff's claim for relief." *Id.* at 516.

In the wake of *Arbaugh*, at least two circuits have considered whether § 704 of the APA implicates the subject matter jurisdiction of the federal courts and both concluded, with little hesitation, that § 704 falls on the non-jurisdictional side of *Arbaugh*'s bright-line rule. *See Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 183-84 & nn. 6-7 (D.C. Cir. 2006) (same); *see also Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18, 33 (1st Cir. 2007) (reaffirming the court's pre-*Arbaugh* determination that the APA's finality requirement is not jurisdictional). It might be possible to argue that, because *Arbaugh* did not specifically address § 704 of the APA, the Court did not overrule *Flue-Cured Tobacco*. As the Sixth Circuit has explained, however, *Arbaugh* "effectively overruled" cases, like *Flue-Cured Tobacco*, that failed to apply a bright-line clear statement rule for jurisdiction. *Thomas v. Miller*, 489 F.3d 293, 298 (6th Cir. 2007).

Accordingly, because § 704 of the APA does not contain a clear statement implicating our subject matter jurisdiction, the "final agency action" requirement contained therein, like the numerosity requirement in Title VII, is "nonjurisdictional in character." *Arbaugh*, 546 U.S. at 516.

## B.

Having concluded that § 704's "final agency action" requirement does not impact our subject matter jurisdiction, we must next decide whether this conclusion nonetheless permits us to consider the presence of final agency action before considering LTC Partners' standing. The question of LTC Partners' standing does impact our subject matter jurisdiction, for standing is "an integral component of the case

or controversy requirement." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006).

The majority, relying on the Supreme Court's even more recent decision in *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184 (2007), concludes that the standing inquiry need not precede consideration of the APA's finality requirement. In *Sinochem*, the Court held that a federal court may properly address *forum non conveniens* before jurisdictional inquiries when those inquiries are difficult and "forum non conveniens considerations weigh heavily in favor of dismissal." *Id.* at 1194. Such a holding was permissible *only* because the Court first found that "[a] *forum non conveniens* dismissal 'den[ies] audience to a case on the *merits*,'" and "is a determination that the *merits* should be adjudicated elsewhere." *Id.* at 1192 (emphasis added) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)). Because, however, "final agency action" under § 704 of the APA should not be considered jurisdictional after *Arbaugh*, I believe it is better categorized as "an element of a plaintiff's claim for relief," *Arbaugh*, 545 U.S. at 516, and, as such, a merits-based ground for dismissal.*

By advancing to the inquiry into final agency action under the APA in this case without first addressing LTC Partners' standing, the majority violates the principle announced in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998). *Steel Co.* clarified that a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject matter jurisdiction) and the parties (personal jurisdiction). *See id.*, at 93-102. "'Without jurisdiction the court cannot proceed at all in any cause,'" *id.* at 94 (quoting *Ex parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1869)), and it may not assume jurisdiction for the purpose of deciding the merits of the case," *id.* at 94. Because standing does implicate our subject matter jurisdiction, advancing to the non-jurisdictional ground of § 704 of the APA prior

---

*And, as part of the claim for relief, failure to prove or plead final agency action would result in failure to file a claim upon which relief may be granted. *See* Federal Rule of Civil Procedure 12(b)(6). Dismissal based upon that ground must be considered dismissal on the merits for purposes of res judicata. *See* Federal Rule of Civil Procedure 41(b).

to deciding the question of LTC Partners' standing represents the very "hypothetical jurisdiction" *Steel Co.* condemns and, accordingly, I must dissent from Part II of the majority opinion.

## II.

### A.

Although the district court declined to address LTC Partners' standing below, the United States renews this argument on appeal and, because "[i]t is well settled that under Article III of the United States Constitution, a plaintiff must establish that a 'case or controversy' exists," *Smith v. Frye*, 488 F.3d 263, 272 (4th Cir. 2007), and "[t]he doctrine of standing is an integral component of the case or controversy requirement," *Miller v. Brown*, 462 F.3d at 316, we have a duty to probe LTC Partners' standing to appear before the court. Indeed, LTC Partners "cannot rest [its] claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Standing has three components:

> First, the plaintiff must have suffered an "injury in fact" - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations and quotation marks omitted).

LTC Partners, as the party asserting federal jurisdiction, has the burden of establishing these requirements. *Id.* at 561.

Some cases, such as this one, illustrate that the distinction between the inquiry into a litigant's Article III standing to bring a claim and the inquiry into the ultimate merits of the plaintiff's claim is often a fine one. *See, e.g.*, *Town of Norwood v. F.E.R.C.*, 202 F.3d 392, 406 (1st Cir. 2000) (noting that, on the facts presented, "the issue of standing and 'the merits' substantially overlap[ped]"); William A. Fletcher, "The Structure of Standing," 98 Yale L.J. 221, 237 (1988) (arguing that "standing determinations are actually determinations on the merits"). In such cases, the inquiry into whether a litigant has alleged some injury in fact that is fairly traceable to the defendant and likely to be redressed by a favorable decision is so close to the merits that it is tempting to put aside the differences between the two inquiries and jump straight to addressing the merits of the litigant's claim. That the distinction between standing and the merits is sometimes shadowy does not mean that the distinction is artificial, however, for, as the Supreme Court has noted, even if standing "often turns on the nature and source of the claim asserted," it "in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth*, 422 U.S. at 500.

Moreover, the Court has cautioned that inquiry into the merits cannot precede inquiry into the Article III standing question without running the risk of rendering the merits inquiry nothing more than an advisory opinion; this illustrates the chronological differences between the two inquiries. *Steel Co.*, 523 U.S. at 94. At its core, "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues," *Warth*, 422 U.S. at 498, which is always a distinct inquiry from the question of how a litigant's claim should be decided. Inasmuch as federal courts cannot hear cases that do not comport with Article III of the Constitution, they also cannot deny a litigant who meets Article III's standing requirements access to a federal forum simply because it appears that he or she cannot win in the end. Article III limits federal court jurisdiction to "cases or controversies," U.S. Const. art. III, § 2, not "cases or controversies that will be decided in the plaintiff's favor," and whether a litigant has a sufficient personal stake in a suit is a different question than whether that litigant has stated a cause of action.

B.

The current case remains at the pleading stage, with the district court having granted the United States' motion to dismiss. The stage

of litigation is significant because, given that the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Of course, at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice," because courts "presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (internal quotation marks and alteration omitted). By contrast, if the case had advanced to the summary judgment stage, such "allegations" would no longer suffice and LTC Partners would be required, under Federal Rule of Civil Procedure 56(e), to "set out" by affidavit or other evidence "specific facts" to support its standing to pursue this action.

Pursuant to this framework, I would conclude that LTC Partners possesses standing to pursue this action. In its original complaint, LTC Partners alleged that it is being injured by the EEOC's exercise of jurisdiction over its "insurability decisions" and that this exercise is "outside [the EEOC's] authority, arbitrary, capricious, . . . and otherwise not in accordance with law." (J.A. at 91.) Such an allegation, at this stage of the litigation, is sufficient to show injury in fact. The Court has found that, "[w]hen the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be [alleged] . . . in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue." *Lujan*, 504 U.S. at 561. If, like here, the pleading contains an allegation that the plaintiff is the object of the action, "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Id.* at 561-62.

Moreover, under *Warth*, an injury in fact can "exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." 422 U.S. at 500. In a similar vein, we have recognized that a party can sue for violation of "a 'procedural right,' e.g., the right to have the Executive observe procedures mandated by law." *Hodges v. Abraham*, 300 F.3d 432, 444 (4th Cir. 2002). The existence of *Leedom* itself, permitting "federal district courts [to exercise] subject

matter jurisdiction to invalidate [agency] actions that clearly fall outside the [agency's] jurisdiction," counsel in favor of finding that LTC is suffering a cognizable injury. *S.C. State Ports Auth. v. N.L.R.B.*, 914 F.2d 49, 51 (4th Cir. 1990). Finally, the standard to show an injury in fact is admittedly low at this stage of litigation; "the claimed injury need not be large, an identifiable trifle will suffice." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 156 (4th Cir. 2000) (en banc) (internal quotation marks omitted).

The causation and redressability requirements for standing are also met here. Neither party disputes that the EEOC is causing this alleged injury. And LTC Partners' requested relief is likely to redress the alleged injury; LTC Partners requested a declaration that the EEOC's "assertion of jurisdiction to review insurability decisions . . . is void" and a declaration that "the EEOC is without jurisdiction to review insurability decisions made pursuant to the [Federal Long Term Care Insurance Program]." (J.A. at 94.) The majority suggests that this requested relief may not redress LTC Partners' injury because the EEOC claims (and the majority agrees) that the EEOC is actually not reviewing individual insurability determinations, but only the Master Contract entered by the Office of Personal Management ("OPM"). This suggestion, however, overlooks the fact that LTC Partners' standing "in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth*, 422 U.S. at 500. LTC Partners' complaint alleges that the EEOC, by exercising jurisdiction over the claims filed by Ralph D. Rouse, Jr. and others, is in fact reviewing its insurability decisions; the majority's conclusion that such an exercise of jurisdiction does not actually affect LTC Partners' individual insurability decisions is a conclusion that LTC Partners has failed to state a claim, not that it lacks standing to bring such a claim.

In sum, given that this case remains at the pleading stage, I would find that LTC Partners has met its burden of providing that it has standing to pursue its claim that the EEOC is exercising jurisdiction over its insurability decisions in a manner contrary to law.

III.

Having concluded that LTC Partners has standing to maintain this action, I next turn to the question of final agency action and the *Lee-*

*dom* exception. On this issue, I disagree with the majority that LTC Partners has failed in its burden to prove it can satisfy *Leedom*'s first prong. Instead, because the plain language of the Long Term Care Security Act, ("LTCSA"), 5 U.S.C.A. §§ 9001-9009 (West 2007), provides that a "carrier's determination as to whether or not a particular individual is eligible to obtain long-term care insurance coverage under this chapter shall be subject to review only to the extent and in the manner provided in the applicable master contract," 5 U.S.C.A. § 9003(c)(2), and the master contract between LTC Partners and OPM does not provide for review by the EEOC, I would find that the EEOC is violating a clear statutory mandate. I agree in full, however, with the majority's conclusion, in Part III.B, that LTC Partners cannot satisfy *Leedom*'s second prong, because LTC Partners cannot show our failure to act "would wholly deprive" it "of a meaningful and adequate means of vindicating its statutory rights." *MCorp. Fin.*, 502 U.S. at 43. In addition, I agree with the conclusion in Part IV that LTC Partners has waived any argument regarding "final agency action," and that, even if a finding of waiver were inappropriate, no final agency action occurred. This agreement permits me to concur in the result reached in Part V, dismissing LTC Partners' complaint.