RUHRGAS AG *v.* MARATHON OIL CO. ET AL.

No. 98–470.   Argued March 22, 1999—Decided May 17, 1999

GINSBURG, J., delivered the opinion for a unanimous Court.

*Charles Alan Wright* argued the cause for petitioner. With him on the briefs were *Ben H. Sheppard, Jr., Harry M. Reasoner, Guy S. Lipe*, and *Arthur R. Miller.*

*Clifton T. Hutchinson* argued the cause for respondents. With him on the brief were *J. Gregory Taylor, David J. Schenck*, and *David L. Shapiro.**

---

*\*Brian J. Serr* filed a brief for the Conference of Chief Justices as *amicus curiae* urging affirmance.

JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns the authority of the federal courts to adjudicate controversies. Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them. In *Steel Co.* v. *Citizens for Better Environment*, 523 U. S. 83 (1998), this Court adhered to the rule that a federal court may not hypothesize subject-matter jurisdiction for the purpose of deciding the merits. *Steel Co.* rejected a doctrine, once approved by several Courts of Appeals, that allowed federal tribunals to pretermit jurisdictional objections "where (1) the merits question is more readily resolved, and (2) the prevailing party on the merits would be the same as the prevailing party were jurisdiction denied." *Id.*, at 93. Recalling "a long and venerable line of our cases," *id.*, at 94, *Steel Co.* reiterated: "The requirement that jurisdiction be established as a threshold matter . . . is 'inflexible and without exception,'" *id.*, at 94–95 (quoting *Mansfield, C. & L. M. R. Co.* v. *Swan*, 111 U. S. 379, 382 (1884)); for "[j]urisdiction is power to declare the law," and "'[w]ithout jurisdiction the court cannot proceed at all in any cause,'" 523 U. S., at 94 (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1869)). The Court, in *Steel Co.*, acknowledged that "the absolute purity" of the jurisdiction-first rule had been diluted in a few extraordinary cases, 523 U. S., at 101, and JUSTICE O'CONNOR, joined by JUSTICE KENNEDY, joined the majority on the understanding that the Court's opinion did not catalog "an exhaustive list of circumstances" in which exceptions to the solid rule were appropriate, *id.*, at 110.

*Steel Co.* is the backdrop for the issue now before us: If, as *Steel Co.* held, jurisdiction generally must precede merits in dispositional order, must subject-matter jurisdiction precede personal jurisdiction on the decisional line? Or, do federal district courts have discretion to avoid a difficult question

of subject-matter jurisdiction when the absence of personal jurisdiction is the surer ground? The particular civil action we confront was commenced in state court and removed to federal court. The specific question on which we granted certiorari asks "[w]hether a federal district court is absolutely barred in all circumstances from dismissing a removed case for lack of personal jurisdiction without first deciding its subject-matter jurisdiction." Pet. for Cert. i.

We hold that in cases removed from state court to federal court, as in cases originating in federal court, there is no unyielding jurisdictional hierarchy. Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter, but there are circumstances in which a district court appropriately accords priority to a personal jurisdiction inquiry. The proceeding before us is such a case.

## I

The underlying controversy stems from a venture to produce gas in the Heimdal Field of the Norwegian North Sea. In 1976, respondents Marathon Oil Company and Marathon International Oil Company acquired Marathon Petroleum Company (Norway) (MPCN) and respondent Marathon Petroleum Norge (Norge). See App. 26.[1] Before the acquisition, Norge held a license to produce gas in the Heimdal Field; following the transaction, Norge assigned the license to MPCN. See Record, Exhs. 61 and 62 to Document 64. In 1981, MPCN contracted to sell 70% of its share of the Heimdal gas production to a group of European buyers, including petitioner Ruhrgas AG. See Record, Exh. 1 to Document 63, pp. 90, 280. The parties' agreement was incor-

---

[1] Ruhrgas is a German corporation; Norge is a Norwegian corporation. See App. 21, 22. Marathon Oil Company, an Ohio corporation, and Marathon International Oil Company, a Delaware corporation, moved their principal places of business from Ohio to Texas while the venture underlying this case was in formation. See *id.*, at 21, 239, and n. 11.

porated into the Heimdal Gas Sales Agreement (Heimdal Agreement), which is "governed by and construed in accordance with Norwegian Law," Record, Exh. B, Tab 1 to Pet. for Removal, Heimdal Agreement, p. 102; disputes thereunder are to be "exclusively and finally . . . settled by arbitration in Stockholm, Sweden, in accordance with" International Chamber of Commerce rules, *id.*, at 100.

## II

Marathon Oil Company, Marathon International Oil Company, and Norge (collectively, Marathon) filed this lawsuit against Ruhrgas in Texas state court on July 6, 1995, asserting state-law claims of fraud, tortious interference with prospective business relations, participation in breach of fiduciary duty, and civil conspiracy. See App. 33–40. Marathon Oil Company and Marathon International Oil Company alleged that Ruhrgas and the other European buyers induced them with false promises of "premium prices" and guaranteed pipeline tariffs to invest over $300 million in MPCN for the development of the Heimdal Field and the erection of a pipeline to Ruhrgas' plant in Germany. See *id.*, at 26–28; Brief for Respondents 1–2. Norge alleged that Ruhrgas' effective monopolization of the Heimdal gas diminished the value of the license Norge had assigned to MPCN. See App. 31, 33, 357; Brief for Respondents 2. Marathon asserted that Ruhrgas had furthered its plans at three meetings in Houston, Texas, and through a stream of correspondence directed to Marathon in Texas. See App. 229, 233.

Ruhrgas removed the case to the District Court for the Southern District of Texas. See 145 F. 3d 211, 214 (CA5 1998). In its notice of removal, Ruhrgas asserted three bases for federal jurisdiction: diversity of citizenship, see 28 U. S. C. § 1332 (1994 ed. and Supp. III), on the theory that Norge, the only nondiverse plaintiff, had been fraudulently

joined;[2] federal question, see §1331, because Marathon's claims "raise[d] substantial questions of foreign and international relations, which are incorporated into and form part of the federal common law," App. 274; and 9 U. S. C. §205, which authorizes removal of cases "relat[ing] to" international arbitration agreements.[3] See 145 F. 3d, at 214–215; 115 F. 3d 315, 319–321 (CA5), vacated and rehearing en banc granted, 129 F. 3d 746 (1997). Ruhrgas moved to dismiss the complaint for lack of personal jurisdiction. Marathon moved to remand the case to the state court for lack of federal subject-matter jurisdiction. See 145 F. 3d, at 215.

After permitting jurisdictional discovery, the District Court dismissed the case for lack of personal jurisdiction. See App. 455. In so ruling, the District Court relied on Fifth Circuit precedent allowing district courts to adjudicate personal jurisdiction without first establishing subject-matter jurisdiction. See id., at 445. Texas' long-arm statute, see Tex. Civ. Prac. & Rem. Code Ann. §17.042 (1997), authorizes personal jurisdiction to the extent allowed by the Due Process Clause of the Federal Constitution. See App. 446; *Kawasaki Steel Corp.* v. *Middleton,* 699 S. W. 2d 199, 200 (Tex. 1985). The District Court addressed the constitutional question and concluded that Ruhrgas' contacts with Texas were insufficient to support personal jurisdiction.

_____

[2] A suit between "citizens of a State and citizens or subjects of a foreign state" lies within federal diversity jurisdiction. 28 U. S. C. §1332(a)(2). Section 1332 has been interpreted to require "complete diversity." See *Strawbridge* v. *Curtiss,* 3 Cranch 267 (1806); R. Fallon, D. Meltzer, & D. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 1528–1531 (4th ed. 1996). The foreign citizenship of defendant Ruhrgas, a German corporation, and plaintiff Norge, a Norwegian corporation, rendered diversity incomplete.

[3] Title 9 U. S. C. §205 allows removal "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958]."

See App. 445–454. Finding "no evidence that Ruhrgas engaged in any tortious conduct in Texas," *id.*, at 450, the court determined that Marathon's complaint did not present circumstances adequately affiliating Ruhrgas with Texas, see *id.*, at 448.[4]

A panel of the Court of Appeals for the Fifth Circuit concluded that "respec[t]" for "the proper balance of federalism" impelled it to turn first to "the formidable subject matter jurisdiction issue presented." 115 F. 3d, at 318. After examining and rejecting each of Ruhrgas' asserted bases of federal jurisdiction, see *id.*, at 319–321,[5] the Court of Appeals vacated the judgment of the District Court and ordered the case remanded to the state court, see *id.*, at 321. This Court denied Ruhrgas' petition for a writ of certiorari, which was

---

[4] Respecting the three meetings Ruhrgas attended in Houston, Texas, see *supra*, at 579, the District Court concluded that Marathon had not shown that Ruhrgas pursued the alleged pattern of fraud and misrepresentation during the Houston meetings. See App. 449. The court further found that Ruhrgas attended those meetings "due to the [Heimdal Agreement] with MPCN." *Id.*, at 450. As the Heimdal Agreement provides for arbitration in Sweden, the court reasoned, "Ruhrgas could not have expected to be haled into Texas courts based on these meetings." *Ibid.* The court also determined that Ruhrgas did not have "systematic and continuous contacts with Texas" of the kind that would "subject it to general jurisdiction in Texas." *Id.*, at 453 (citing *Helicopteros Nacionales de Colombia, S. A.* v. *Hall*, 466 U. S. 408 (1984)).

[5] The Court of Appeals concluded that whether Norge had a legal interest in the Heimdal license notwithstanding its assignment to MPCN likely turned on difficult questions of Norwegian law; Ruhrgas therefore could not show, at the outset, that Norge had been fraudulently joined as a plaintiff to defeat diversity. See 115 F. 3d 315, 319–320 (CA5), vacated and rehearing en banc granted, 129 F. 3d 746 (1997). The appeals court also determined that Marathon's claims did not "strike at the sovereignty of a foreign nation," so as to raise a federal question on that account. 115 F. 3d, at 320. Finally, the court concluded that Marathon asserted claims independent of the Heimdal Agreement and that the case therefore did not "relat[e] to" an international arbitration agreement under 9 U. S. C. §205. See 115 F. 3d, at 320–321.

limited to the question whether subject-matter jurisdiction existed under 9 U. S. C. § 205.   See 522 U. S. 967 (1997).

The Fifth Circuit, on its own motion, granted rehearing en banc, thereby vacating the panel decision.   See 129 F. 3d 746 (1997).   In a 9-to-7 decision, the en banc court held that, in removed cases, district courts must decide issues of subject-matter jurisdiction first, reaching issues of personal jurisdiction "only if subject-matter jurisdiction is found to exist." 145 F. 3d, at 214.   Noting *Steel Co.*'s instruction that subject-matter jurisdiction must be "'established as a threshold matter,'" 145 F. 3d, at 217 (quoting 523 U. S., at 94), the Court of Appeals derived from that decision "counsel against" recognition of judicial discretion to proceed directly to personal jurisdiction.   145 F. 3d, at 218.   The court limited its holding to removed cases; it perceived in those cases the most grave threat that federal courts would "usur[p] . . . state courts' residual jurisdiction."   *Id.*, at 219.[6]

Writing for the seven dissenters, Judge Higginbotham agreed that subject-matter jurisdiction ordinarily should be considered first.   See *id.*, at 231.   If the challenge to personal jurisdiction involves no complex state-law questions, however, and is more readily resolved than the challenge to subject-matter jurisdiction, the District Court, in the dissenters' view, should take the easier route.   See *ibid.* Judge Higginbotham regarded the District Court's decision dismissing Marathon's case as illustrative and appropriate: While Ruhrgas' argument under 9 U. S. C. § 205 presented a difficult issue of first impression, its personal jurisdiction challenge raised "[n]o substantial questions of purely state law," and "could be resolved relatively easily in [Ruhrgas'] favor."   145 F. 3d, at 232–233.

---

[6] The Fifth Circuit remanded the case to the District Court for it to consider the "nove[l]" subject-matter jurisdiction issues presented.   145 F. 3d 211, 225 (CA5 1998).   The appeals court "express[ed] no opinion" on the vacated panel decision which had held that the District Court lacked subject-matter jurisdiction.   *Id.*, at 225, n. 23.

We granted certiorari, 525 U. S. 1039 (1998), to resolve a conflict between the Circuits[7] and now reverse.

## III

*Steel Co.* held that Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case. "For a court to pronounce upon [the merits] when it has no jurisdiction to do so," *Steel Co.* declared, "is . . . for a court to act ultra vires." 523 U. S., at 101–102. The Fifth Circuit incorrectly read *Steel Co.* to teach that subject-matter jurisdiction must be found to exist, not only before a federal court reaches the merits, but also before personal jurisdiction is addressed. See 145 F. 3d, at 218.

### A

The Court of Appeals accorded priority to the requirement of subject-matter jurisdiction because it is nonwaivable and delimits federal-court power, while restrictions on a court's jurisdiction over the person are waivable and protect individual rights. See *id.*, at 217–218. The character of the two jurisdictional bedrocks unquestionably differs. Subject-matter limitations on federal jurisdiction serve institutional interests. They keep the federal courts within the bounds the Constitution and Congress have prescribed. Accordingly, subject-matter delineations must be policed by the courts on their own initiative even at the highest level. See *Steel Co.*, 523 U. S., at 94–95; Fed. Rule Civ. Proc. 12(h)(3) ("Whenever it appears . . . that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."); 28 U. S. C. § 1447(c) (1994 ed., Supp. III) ("If at any time before final judgment [in a removed case] it appears that the

---

[7] The Court of Appeals for the Second Circuit has concluded that district courts have discretion to dismiss a removed case for want of personal jurisdiction without reaching the issue of subject-matter jurisdiction. See *Cantor Fitzgerald, L. P.* v. *Peaslee*, 88 F. 3d 152, 155 (1996).

district court lacks subject matter jurisdiction, the case shall be remanded.").

Personal jurisdiction, on the other hand, "represents a restriction on judicial power . . . as a matter of individual liberty." *Insurance Corp. of Ireland* v. *Compagnie des Bauxites de Guinee*, 456 U. S. 694, 702 (1982). Therefore, a party may insist that the limitation be observed, or he may forgo that right, effectively consenting to the court's exercise of adjudicatory authority. See Fed. Rule Civ. Proc. 12(h)(1) (defense of lack of jurisdiction over the person waivable); *Insurance Corp. of Ireland*, 456 U. S., at 703 (same).

These distinctions do not mean that subject-matter jurisdiction is ever and always the more "fundamental." Personal jurisdiction, too, is "an essential element of the jurisdiction of a district . . . court," without which the court is "powerless to proceed to an adjudication." *Employers Reinsurance Corp.* v. *Bryant*, 299 U. S. 374, 382 (1937). In this case, indeed, the impediment to subject-matter jurisdiction on which Marathon relies—lack of complete diversity—rests on statutory interpretation, not constitutional command. Marathon joined an alien plaintiff (Norge) as well as an alien defendant (Ruhrgas). If the joinder of Norge is legitimate, the complete diversity required by 28 U. S. C. § 1332 (1994 ed. and Supp. III), but not by Article III, see *State Farm Fire & Casualty Co.* v. *Tashire*, 386 U. S. 523, 530–531 (1967), is absent. In contrast, Ruhrgas relies on the constitutional safeguard of due process to stop the court from proceeding to the merits of the case. See *Insurance Corp. of Ireland*, 456 U. S., at 702 ("The requirement that a court have personal jurisdiction flows . . . from the Due Process Clause.").

While *Steel Co.* reasoned that subject-matter jurisdiction necessarily precedes a ruling on the merits, the same principle does not dictate a sequencing of jurisdictional issues. "[A] court that dismisses on . . . non-merits grounds such as . . . personal jurisdiction, before finding subject-matter jurisdiction, makes no assumption of law-declaring power

that violates the separation of powers principles underlying *Mansfield* and *Steel Company.*" *In re Papandreou,* 139 F. 3d 247, 255 (CADC 1998). It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits. Thus, as the Court observed in *Steel Co.,* district courts do not overstep Article III limits when they decline jurisdiction of state-law claims on discretionary grounds without determining whether those claims fall within their pendent jurisdiction, see *Moor* v. *County of Alameda,* 411 U. S. 693, 715–716 (1973), or abstain under *Younger* v. *Harris,* 401 U. S. 37 (1971), without deciding whether the parties present a case or controversy, see *Ellis* v. *Dyson,* 421 U. S. 426, 433–434 (1975). See *Steel Co.,* 523 U. S., at 100–101, n. 3; cf. *Arizonans for Official English* v. *Arizona,* 520 U. S. 43, 66–67 (1997) (pretermitting challenge to appellants' standing and dismissing on mootness grounds).

## B

Maintaining that subject-matter jurisdiction must be decided first even when the litigation originates in federal court, see Tr. of Oral Arg. 21; Brief for Respondents 13, Marathon sees removal as the more offensive case, on the ground that the dignity of state courts is immediately at stake. If a federal court dismisses a removed case for want of personal jurisdiction, that determination may preclude the parties from relitigating the very same personal jurisdiction issue in state court. See *Baldwin* v. *Iowa State Traveling Men's Assn.,* 283 U. S. 522, 524–527 (1931) (personal jurisdiction ruling has issue-preclusive effect).

Issue preclusion in subsequent state-court litigation, however, may also attend a federal court's subject-matter determination. Ruhrgas hypothesizes, for example, a defendant who removes on diversity grounds a state-court suit seeking $50,000 in compensatory and $1 million in punitive damages for breach of contract. See Tr. of Oral Arg. 10–11. If the district court determines that state law does not allow puni-

tive damages for breach of contract and therefore remands the removed action for failure to satisfy the amount in controversy, see 28 U. S. C. § 1332(a) (1994 ed., Supp. III) ($75,000), the federal court's conclusion will travel back with the case. Assuming a fair airing of the issue in federal court, that court's ruling on permissible state-law damages may bind the parties in state court, although it will set no precedent otherwise governing state-court adjudications. See *Chicot County Drainage Dist.* v. *Baxter State Bank,* 308 U. S. 371, 376 (1940) ("[Federal courts'] determinations of [whether they have jurisdiction to entertain a case] may not be assailed collaterally."); Restatement (Second) of Judgments § 12, p. 115 (1980) ("When a court has rendered a judgment in a contested action, the judgment [ordinarily] precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation."). Similarly, as Judge Higginbotham observed, our "dualistic . . . system of federal and state courts" allows federal courts to make issue-preclusive rulings about state law in the exercise of supplemental jurisdiction under 28 U. S. C. § 1367. 145 F. 3d, at 231, and n. 7.

Most essentially, federal and state courts are complementary systems for administering justice in our Nation. Cooperation and comity, not competition and conflict, are essential to the federal design. A State's dignitary interest bears consideration when a district court exercises discretion in a case of this order. If personal jurisdiction raises "difficult questions of [state] law," and subject-matter jurisdiction is resolved "as eas[ily]" as personal jurisdiction, a district court will ordinarily conclude that "federalism concerns tip the scales in favor of initially ruling on the motion to remand." *Allen* v. *Ferguson,* 791 F. 2d 611, 616 (CA7 1986). In other cases, however, the district court may find that concerns of judicial economy and restraint are overriding. See, *e. g.,* *Asociacion Nacional de Pescadores* v. *Dow Quimica,* 988 F. 2d 559, 566–567 (CA5 1993) (if removal is nonfrivolous and

personal jurisdiction turns on federal constitutional issues, "federal intrusion into state courts' authority . . . is minimized"). The federal design allows leeway for sensitive judgments of this sort. "'Our Federalism'"

> "does not mean blind deference to 'States' Rights' any more than it means centralization of control over every important issue in our National Government and its courts. The Framers rejected both these courses. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments." *Younger*, 401 U. S., at 44.

The Fifth Circuit and Marathon posit that state-court defendants will abuse the federal system with opportunistic removals. A discretionary rule, they suggest, will encourage manufactured, convoluted federal subject-matter theories designed to wrench cases from state court. See 145 F. 3d, at 219; Brief for Respondents 28–29. This specter of unwarranted removal, we have recently observed, "rests on an assumption we do not indulge—that district courts generally will not comprehend, or will balk at applying, the rules on removal Congress has prescribed. . . . The well-advised defendant . . . will foresee the likely outcome of an unwarranted removal—a swift and nonreviewable remand order, see 28 U. S. C. §§ 1447(c), (d), attended by the displeasure of a district court whose authority has been improperly invoked." *Caterpillar Inc.* v. *Lewis*, 519 U. S. 61, 77–78 (1996).

## C

In accord with Judge Higginbotham, we recognize that in most instances subject-matter jurisdiction will involve no arduous inquiry. See 145 F. 3d, at 229 ("engag[ing]" subject-matter jurisdiction "at the outset of a case . . . [is] often . . . the most efficient way of going"). In such cases, both expedition and sensitivity to state courts' coequal stature should

impel the federal court to dispose of that issue first. See *Cantor Fitzgerald, L. P.* v. *Peaslee*, 88 F. 3d 152, 155 (CA2 1996) (a court disposing of a case on personal jurisdiction grounds "should be convinced that the challenge to the court's subject-matter jurisdiction is not easily resolved"). Where, as here, however, a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction.[8]

\*     \*     \*

For the reasons stated, the judgment of the Court of Appeals is reversed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*

---

[8] Ruhrgas suggests that it would be appropriate simply to affirm the District Court's holding that it lacked personal jurisdiction over Ruhrgas. See Brief for Petitioner 38–39, and n. 20. That issue is not within the question presented and is properly considered by the Fifth Circuit on remand.