SHEDD, Circuit Judge,
concurring:
I agree with the majority that the Rook-er-Feldman doctrine does not bar our subject-matter jurisdiction in this case. I would add, however, that a district court, when presented with this issue, should consider it in the first instance. See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (“Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case.”).
I also agree that under our very limited standard of review, we must affirm the district court’s denial of qualified immunity to Wilmore. As a result, on remand Washington’s case against Wilmore will proceed on one very narrow claim: specifically, Washington’s claim that Wilmore deliberately fabricated “evidence” by making the “unclear” statement in the May 24, 1983, police report that Washington “gave pertinent information about the crime [ i.e., the shirt] that no one knew with the exception of himself.”[1] This claim, although extremely serious, is but one of many extraordinary allegations on which Washington premised this case, virtually all of which have been rejected (subject to future appellate review) as factually unsupported by the district court.
For example, in his Amended Complaint, Washington stated that his “ordeal was not a tragic mistake, but the result of a concerted effort by law enforcement officers ... to convict him for [the Williams rape and murder] despite the total absence of credible evidence against him.” Washington asserted that among their alleged misdeeds, these officers, who “knew or should have known” that he was innocent of the Williams rape and murder, used coercive tactics and “secured false and fabricated confessions from him, feeding him sufficient details about the crime until he ‘got it right.’ ” Moreover, Washington asserted that although the officers “knew the confessions were bogus, they nevertheless arrested, charged, and tried [him] for capital murder, all the while suppressing or ignoring exculpatory evidence, concealing exculpatory evidence from him, failing to explore other obvious leads, and deliberately choosing not to test forensic evidence that would have exonerated him.” Washington also asserted that he is mentally retarded and that the officers “knew or should have known that [he] was cognitively impaired and highly susceptible to police coercion.”
Contrary to these allegations, the district court found that “[t]here is no evidence on the record tending to show that [the officers] knew that Washington was actually innocent of the Williams murder when he was interrogated following his arrest on May 21, 1983.” Washington, 322 F.Supp.2d at 708. The district court similarly found that “[t]here is no evidence that the officers intentionally took advantage of Washington’s mental state at the time of the interrogation to solicit a false *285 confession,” id., or that they “knew that Washington was mentally retarded at the time of the interrogations,” id. at 713. The district court also found that “[e]ven assuming that [the officers] asked Washington leading questions, the record supports the conclusion that Washington answered those questions, and confessed to the Williams murder;” the district court thus concluded that“[t]he confession itself was not a fabrication.” Id. at 712. Consequently, the district court held that “there is no evidence on the record to support Washington’s coercion claim against [the officers].” Id. at 715.
The First Circuit has aptly stated that “if any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit. Actions taken in contravention of this prohibition necessarily violate due process (indeed, we are unsure what due process entails if not protection against deliberate framing under color of official sanction).” Limone v. Condon, 372 F.3d 39, 44-45 (1st Cir.2004) (citation omitted).[2] By our decision today, we have expressed no opinion on whether any law enforcement officer — including Wilmore— violated this constitutional precept in regard to the criminal case against Washington.[3] We have merely held, based on the record before us and in light of our limited standard of review, that we cannot reverse the district court’s denial of qualified immunity to Wilmore.

. See Washington v. Buraker, 322 F.Supp.2d 702, 717 (W.D.Va.2004) ("The only remaining claims in this action are Washington’s fabrication claim against Wilmore and Washington’s state law defamation claim against defendant Gary L. Close").

. Unquestionably, the circumstances of Washington's conviction and eventual pardon are extraordinary and warrant public scrutiny. See Virginia Dept. of State Police v. Washington Post, 386 F.3d 567, 574 (4th Cir.2004), cert. denied, — U.S. -, 125 S.Ct. 1706, 161 L.Ed.2d 526 (2005) (noting the public's obvious interest in how the justice system operated in the criminal case against Washington). However, the issue in this litigation is not simply whether the justice system failed Washington, but instead whether any such failure is the result of deliberate or reckless misconduct by law enforcement.

. Likewise, we have expressed no opinion whether the district court correctly dismissed Washington's other claims, which are not now before us.