**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHARLES T. MADDEN; SHASHIDHAR
ACHARYA, M.D.; ACHAUER FAMILY
LIMITED PARTNERSHIP, a limited
partnership; ANGELA ALLEVATO,
M.D.; ROBERT A. BAIRD, M.D.;
ANNETTE C. BERNHUT-CAPLIN,
D.O.; THOMAS W. BRODERICK,
M.D.; NANCY K. BROWNELL, M.D.;
DAWN LYNN BRUNER, M.D.;
ROBERT BUDMAN, M.D.; ROBERT
WILLIAM BUSTER, M.D.; MICHAEL
W. CATER, M.D.; ANNA LISA
CHAVEZ, M.D.; JANAK R. CHOPRA,
M.D.; RAMAN CHOPRA, M.D.;
GASTON CILLIANI, M.D.; CARMELITA
R. CO-CASQUEJO, M.D.; WILLIAM J.
COLLINS, M.D.; LEO H. CUMMINS,
M.D.; CHRISTINA K. ELLIOTT; MARK
H. ELLIS, M.D.; STANLEY P.
GALANT, M.D.; SHERWIN A.
GILLMAN, M.D. and BONNIE S.
GILLMAN, as Trustees for the
Gillman Community Property
Trust; KEITH L. GLADSTIEN, M.D.;
STUART M. GORDON; KENNETH E.
GRUBBS, D.O.; NORAH GUTRECHT,
M.D.;

No.07-15900

D.C. No.
CV-06-04886-JSW

OPINION

1653

THOMAS A. HRYNIEWICKI, M.D.; R. JUDD JESSUP; STANLEY KANOW, M.D.; LEONARD FRANK KELLOGG JR., M.D.; MARK E. KRUGMAN, M.D.; LAWRENCE N. KUGELMAN; SANDRA BARRY LIEBERMAN, as successor in interest to Melvyn B. Lieberman, M.D., Trustee for the Melvyn B. Lieberman Trust; ALAN MADERIOUS, M.D.; MARK C. MARTEN; WILLIAM C. MCMASTER, M.D.; MARIA E. MIÑON, M.D.; JUDITH HARRISON-MONGE, M.D., as Trustee for the Harrison-Monge 1996 Family Trust; RONALD W. MORELAND; STANLEY K. NAKAMOTO, M.D.; CHRISTOPHER C. OHMAN; KUSUM OHRI, M.D.; JACK M. OSBORN, M.D.; RICHARD T. PITTS, D.O.; NORMAN J. ROSEN, M.D.; ERIC MURROW ROWEN, M.D.; HELEN ROWEN, as Trustee for the Rowen Family Trust Dated May 5, 1982; MARK STEVEN ROWEN; MARSHALL ROWEN, M.D., individually and as Trustee for the Rowen Family Trust Dated May 5, 1982; SCOTT JEFFREY ROWEN, M.D.; PRAVIN V. SHARMA, M.D.; HAL S. SHIMAZU, M.D.; SIERRA VENTURES V, L.P., a California limited partnership; AISHA SIMJEE, M.D.; JAMES B. TANANBAUM;

ALLAN G. WEISS; DANIEL L. WEISSBERG, M.D.; LINDA F. WEISSBERG; LAURENCE D. WELLIKSON, M.D.; ANGELA F. WINTHEISER; and ALLAN WONG, M.D.,

*Plaintiffs-Appellants,*

v.

COWEN & COMPANY, a New York limited partnership; SG COWEN SECURITIES CORPORATION, a New York corporation; COWEN COMPANY, LLC, a Delaware limited liability company,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted
November 21, 2008—San Francisco, California

Filed February 11, 2009

Before: Procter Hug, Jr., John T. Noonan, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

**COUNSEL**

Phillip Borowski, San Francisco, California, for the plaintiffs-appellants.

Linda Goldstein, New York, New York, for the defendants-appellees

**OPINION**

IKUTA, Circuit Judge:

Sixty-three shareholders brought a state-law action against an investment bank for misleading them in connection with the sale of their closely held corporation to a publicly traded acquiring corporation. The suit was removed to federal district court under the Securities Litigation Uniform Standards Act of 1998, Pub. L. No. 105-353, 112 Stat. 3227 ("SLUSA"), which allows for the removal and preclusion[1] of

---

[1]The Supreme Court recently explained that SLUSA precludes, rather than preempts, state law claims: "The preclusion provision is often called a preemption provision; the Act, however, does not itself displace state law with federal law but makes some state-law claims nonactionable through the class action device in federal as well as state court." *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 636 n.1 (2006).

"private state-law 'covered' class actions alleging untruth or manipulation in connection with the purchase or sale of a 'covered' security." *Kircher*, 547 U.S. at 636-37 (quoting 15 U.S.C. § 77p(b)).[2] We conclude that the suit falls within SLUSA's savings clause, known as the "Delaware carve-out," which preserves certain state-law actions. 15 U.S.C. § 77p(d). We therefore vacate and remand to the district court with instructions to remand the action to state court.

I

Charles T. Madden, along with sixty-two other individuals and entities (collectively, "Madden"), brought a state-law action in state court against Cowen & Company, SG Cowen Securities Corporation, and Cowen and Company, LLC (collectively, "Cowen"). Madden and his fellow plaintiffs, most of whom are physicians, owned a majority interest in St. Joseph Medical Corporation, which in turn owned a controlling share in Orange Coast Managed Care Services. Both St. Joseph and Orange Coast were closely held corporations. St. Joseph was incorporated in California, and Orange Coast in Delaware. The following facts are taken from the allegations in Madden's complaint:

In 1997, the management of St. Joseph and Orange Coast sought a buyer for the two companies and formed a "Special Committee" for that purpose. The Special Committee, which included members of the boards of directors of St. Joseph and Orange Coast, retained an investment bank, Cowen, whose duties included looking for prospective buyers, providing advice regarding the structure of any potential sale, and pro-

---

[2]SLUSA amended section 16 of the Securities Act of 1933 ("1933 Act"), codified at 15 U.S.C. § 77p, and made a substantially identical amendment to section 28(f) of the 1934 Act, codified at 15 U.S.C. § 78bb(f). For simplicity, we follow Kircher and cite to the relevant provision in the 1933 Act, 15 U.S.C. § 77p, except as noted. *See* 547 U.S. at 637 n.3.

viding the shareholders of St. Joseph with a "fairness opinion" regarding any proposed transaction. Cowen's contract provided that it would receive a $50,000 retainer fee plus 1% of any sale price, payable in cash.

Cowen found four possible buyers, two of which are relevant here: St. Joseph's Hospital of Orange County, already a part-owner of Orange Coast, offered $40 million ($30 million in cash and a $10 million note); and FPA Medical Management, a publicly traded corporation, offered shares of its stock valued at $66.5 million. After Cowen recommended FPA as a buyer, St. Joseph and Orange Coast began exclusive negotiations with FPA. In January 1998, these discussions resulted in an agreement on the terms of a merger. Under the merger agreement, FPA would acquire all outstanding shares of St. Joseph and thereby obtain St. Joseph's controlling share in Orange Coast as well. In exchange, FPA would issue shares of its stock worth $60 million to St. Joseph's shareholders. Cowen concluded that this transaction would be financially fair to the shareholders of Orange Coast and St. Joseph.

On January 13, 1998, the boards of directors of Orange Coast and St. Joseph approved the merger agreement. A week later, the agreement was executed by Orange Coast, St. Joseph, and FPA, although it had not yet been approved by St. Joseph's shareholders. On February 5, 1998, Cowen issued a letter memorializing its fairness opinion. FPA then filed a registration statement for the new stock it would issue to Madden under the terms of the merger agreement. The registration statement, which included Cowen's fairness letter (as well as Cowen's written consent to its inclusion), was approved by the Securities and Exchange Commission (SEC) on February 17, 1998. After receiving a copy of the registration statement and fairness letter, Madden voted in favor of the merger agreement. The merger became effective on March 20, 1998.

A few months later, on May 15, 1998, FPA issued a calamitous first-quarter report for 1998: earnings per share were 30

cents below expectation, and FPA's share price tumbled 75% in the next two trading days. Two months later FPA declared bankruptcy, with a share price that was approximately 0.5% of its value at the time of the merger agreement. Madden agreed with Cowen to toll the statute of limitations so that Madden could first sue FPA's management, auditor, and financial advisor in California court. Those defendants removed the action to federal district court, which entered summary judgment in their favor. We upheld the grant of summary judgment on appeal. *See Madden v. Deloitte & Touche, LLP*, 118 F. App'x 150, 153-54 (9th Cir. 2004). Madden then brought the present action against Cowen in California court, alleging that Cowen committed negligent representation and professional negligence under California law in connection with its role in the merger. Cowen removed the action to federal district court. Applying SLUSA, the district court denied Madden's motion to remand to state court and granted Cowen's motion to dismiss. Madden timely appealed.

## II

SLUSA is part of a recent congressional attempt to rein in private securities litigation. Section 10(b) of the Securities and Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 of the SEC's regulations, 17 C.F.R. § 240.10b-5, serve as the federal securities laws' catchall anti-fraud provisions, *see Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 203 (1976), broadly prohibiting "deception, misrepresentation, and fraud in connection with the purchase or sale of any security," *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 78 (2006) (internal quotation marks omitted). The Supreme Court has long recognized an implied private right of action under these provisions. *Id.* at 79 (citing *Superintendent of Ins. of N.Y. v. Bankers Life & Cas. Co.*, 404 U.S. 6 (1971)).

In 1995, Congress adopted "legislation targeted at perceived abuses of the class-action vehicle in litigation involv-

ing nationally traded securities." *Dabit*, 547 U.S. at 81. The Private Securities Litigation Reform Act of 1995 ("Reform Act"), 109 Stat. 737 (codified at 15 U.S.C. §§ 77z-1 and 78u-4), was intended "to deter or at least quickly dispose of" abusive class actions, particularly those alleging violations of Section 10(b), by limiting the potential liability of defendants and requiring plaintiffs bringing private securities fraud actions in federal court to surmount a number of procedural hurdles. *Dabit*, 547 U.S. at 81-82. But rather "than face the obstacles set in their path by the Reform Act, plaintiffs and their representatives began bringing class actions under state law, often in state court." *Id.* at 82. In response to this unintended consequence of the Reform Act, Congress enacted SLUSA to "stem this shift from Federal to State courts and prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the Reform Act." *Id.* (internal quotation marks and alterations omitted).

[1] SLUSA sought to achieve these goals by generally precluding state-law "covered class actions" alleging fraud or misrepresentation in connection with "covered securities." SLUSA's preclusion provision states:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
>> (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
>>
>> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b).

**[2]** The breadth of this preclusion provision is limited in several respects. It applies only to a "covered class action," defined to include an action "to recover damages on a representative basis" or in which "damages are sought on behalf of more than 50 persons." 15 U.S.C. § 77p(f)(2)(A)(i). It is also limited to actions involving a "covered security," defined as a security "traded nationally and listed on a regulated national exchange," *Dabit*, 547 U.S. at 83, "at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred." 15 U.S.C. 77p(f)(3) (cross-referencing the statutory definition of "covered security" in § 77r).

Additionally, SLUSA preserves certain types of state-law claims that fall within the scope of its preclusion provision. Most relevant here is the Delaware carve-out, 15 U.S.C. § 77p(d), which provides that a private party may bring a covered class action "based upon the statutory or common law of the State in which the issuer is incorporated (in the case of a corporation) or organized (in the case of any other entity)," § 77p(d)(1)(A), if the action involves:

> (i) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or

> (ii) any recommendation, position, or other communication with respect to the sale of securities of the issuer that—

>> (I) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and

>> (II) concerns decisions of those equity holders with respect to voting their securities,

> acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

15 U.S.C. § 77p(d)(1)(B).

To prevent actions precluded by SLUSA from being litigated in state court, SLUSA authorizes defendants to remove such actions to federal court, effectively ensuring that federal courts will have the opportunity to determine whether a state action is precluded.[3] As the Supreme Court has explained, any suit removable under SLUSA's removal provision, § 77p(c), is precluded under SLUSA's preclusion provision, § 77p(b), and any suit not precluded is not removable. *See Kircher*, 547 U.S. at 644; *see also Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 131-32 (2d Cir. 2003) (Newman, J., concurring) (noting that SLUSA's removal and preclusion provisions are "opposite sides of the same coin"). If a federal court determines that an action is not precluded under § 77p(b), it "has no jurisdiction to touch the case on the merits, and the proper course is to remand to the state court that can deal with it." *Kircher*, 547 U.S. at 644. Likewise, if a federal court "determines that the action may be maintained in State court pursuant to" the Delaware carve-out, "the Federal court shall remand such action to such State court." 15 U.S.C. § 77p(d)(4).

---

[3]Section 77p(c) provides:

> Any covered class action brought in any State court involving a covered security, as set forth in subsection (b) [15 U.S.C. § 77p(b), the SLUSA preclusion provision], shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b).

15 U.S.C. § 77p(c).

## III

The question before us is whether the district court correctly determined that Madden's complaint, which alleged state-law claims and was filed in state court, is the sort of covered class action that is both (1) precluded by § 77p(b) of SLUSA and (2) not saved from preclusion by the Delaware carve-out, § 77p(d). A "federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.' " *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)). Because we conclude the Delaware carve-out, § 77p(d), applies to Madden's suit, we remand this case to the district court with instructions to remand to state court. Accordingly, we need not consider whether Madden's suit falls within SLUSA's preclusion provision, § 77p(b), and therefore need not resolve whether Madden's suit alleges a misrepresentation or omission "in connection with the purchase or sale of a covered security," 15 U.S.C. § 77p(b)(1).[4]

**[3]** Madden argues his complaint survives SLUSA's preclusion provision because it falls within a subsection of the Delaware carve-out, § 77p(d)(1)(B)(ii). For Madden's suit to qualify under this subsection, it must (1) be based on the law of the state in which "the issuer" is incorporated and (2) involve a "communication with respect to the sale" of the issuer's securities that (3) was made "by or on behalf of" the issuer or its affiliate (4) to the shareholders of the issuer and that (5) "concerns" specified shareholder decisions, including a "response to a tender or exchange offer." 15 U.S.C. § 77p(d)(1)(A), (B)(ii).

Madden claims that his suit against Cowen qualifies for this

---

[4]The parties do not dispute that Madden's suit, which seeks damages on behalf of more than fifty plaintiffs, is a "covered class action" as defined in 15 U.S.C. § 77p(f)(2).

subsection of the Delaware carve-out as follows: First, Madden brought his suit under the law of California, the state of incorporation of St. Joseph, which Madden argues is the relevant "issuer" under the subsection because it was the issuer of the securities that Madden sold to FPA in response to FPA's exchange offer. Second, Madden's suit involves a communication with respect to the sale of St. Joseph's securities, namely, Cowen's letter opining that the exchange of St. Joseph securities for FPA shares of stock would be financially fair to St. Joseph's shareholders. Third, this communication was made by or on behalf of St. Joseph, because Cowen was retained by St. Joseph's and Orange Coast's management to make such a communication to St. Joseph shareholders. Fourth, the communication was made to St. Joseph shareholders when they received the fairness opinion. And fifth, the communication concerned a decision by St. Joseph shareholders regarding their response to FPA's exchange offer.

Cowen disputes two of these claims: that St. Joseph is "the issuer" referred to in the Delaware carve-out, and that Cowen was acting "on behalf of" St. Joseph when it provided its fairness opinion. We address each in turn.[5]

A

Cowen first argues that St. Joseph is not "the issuer" for purposes of the Delaware carve-out. Cowen notes that the Delaware carve-out, § 77p(d), refers to "*the* issuer" rather

---

[5]Cowen also argues that Madden's suit cannot qualify under the Delaware carve-out as an action against Cowen for making a communication on behalf of Orange Coast (as opposed to St. Joseph). Because Orange Coast was incorporated in Delaware and Madden's suit was brought in California, Cowen argues that, if Orange Coast is "the issuer," the suit would not be "based upon the statutory or common law of the State in which the issuer is incorporated." 15 U.S.C. § 77p(d)(1)(A). We need not address this argument, however, because we conclude that Cowen made its communication on behalf of St. Joseph, which was incorporated in California.

than "*an* issuer," and contends that "the issuer" must refer to the issuer of the "covered security" referred to in SLUSA's preclusion provision, § 77p(b). Otherwise, Cowen argues, the definite article in "the issuer" would have no antecedent. Cowen also notes that in *Dabit* the Supreme Court described the Delaware carve-out as applying to "class actions based on the law of the State in which the issuer *of the covered security* is incorporated." 547 U.S. at 87 (emphasis added). Under Cowen's interpretation of § 77p(d), the Delaware carve-out would apply only to FPA and not to St. Joseph (which as a closely held corporation was not an issuer of covered securities). In this case, Cowen argues, the Delaware carve-out would preserve only suits based on Delaware law (where FPA is incorporated) involving communications to FPA shareholders concerning their decisions in voting their FPA securities. Because Madden's action is based upon California law (where St. Joseph is incorporated) and does not involve communications to FPA shareholders, Cowen argues that the Delaware carve-out is inapplicable to Madden's suit.

[4] We disagree. As in all statutory interpretation, we start with the plain language of the statute. *See Ariz. Health Care Cost Containment Sys. v. McClellan*, 508 F.3d 1243, 1249 (9th Cir. 2007). The Delaware carve-out does not use the phrase "issuer of the covered securities." Rather, the Delaware carve-out refers only to "securities" or "equity securities." 15 U.S.C. § 77p(d)(1)(B). SLUSA does not define the word "issuer" to mean "issuer of the covered securities," nor does SLUSA's preclusion provision, § 77p(b), refer to an "issuer of covered securities." Thus, contrary to Cowen's argument, there is no clear antecedent to the phrase "the issuer" in the Delaware carve-out. Moreover, the significance of the word "the" before "issuer" in the version of the Delaware carve-out added to the 1933 Act is questionable, given that SLUSA's nearly identical Delaware carve-out in the 1934 Act refers to both "the issuer" and "an issuer." *See* 15 U.S.C. § 78bb(f)(3)(A)(ii)(II) (providing that the Delaware carve-out applies to a covered class action that involves "any recom-

mendation, position, or other communication with respect to the sale of securities of *an issuer*" that meets certain criteria) (emphasis added). If the choice of the word "the" instead of "an" had substantive meaning, we would expect that the word "the" would have been used consistently in two otherwise identical amendments. *Cf. Kircher*, 547 U.S. at 637 n.3 (noting that SLUSA amends the 1933 Act and 1934 Act "in substantially identical ways"). Accordingly, we conclude that the plain language of § 77p(d) allows a shareholder to bring a covered class action under state law against any "issuer" that has made certain communications regarding the sale of its "securities," and that these securities need not be the "covered securit[ies]" referred to in § 77p(b).

**[5]** "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004). Nonetheless, we note our disagreement with Cowen's argument that SLUSA's legislative history suggests a congressional intent to limit the Delaware carve-out to suits against issuers of "covered securities." The public debate surrounding Congress's addition of the Delaware carve-out weighs against Cowen's interpretation. The testimony before Congress when it inserted the Delaware carve-out into SLUSA suggests that the purpose of § 77p(d) was to preserve state-law actions brought by shareholders against their own corporations in connection with extraordinary corporate transactions requiring shareholder approval, such as mergers and tender offers, regardless whether the corporations issued nationally traded securities.[6]

---

[6]*See, e.g.*, *Securities Litigation Uniform Standards Act of 1997: Hearing on S. 1260 Before the S. Comm. on Banking, Housing, and Urban Affairs, Subcomm. on Securities*, 105th Cong. 48 (Oct. 29, 1997) (statement of SEC Chairman Arthur Levitt and Commissioner Isaac Hunt, Securities and Exchange Commission) (expressing concern that the version of SLUSA originally introduced in the Senate "could preempt state

Nor does the Supreme Court's passing reference in *Dabit* to one type of class action covered by the Delaware carve-out require us to adopt a different reading. *See* 547 U.S. at 87 (noting that the Delaware carve-out applies to "class actions based on the law of the State in which the issuer of the covered security is incorporated"). In context, the Court's reference to the Delaware carve-out in *Dabit* is simply part of the Court's explanation that "the tailored exceptions to SLUSA's pre-emptive command demonstrate that Congress did not by any means act 'cavalierly' " in displacing state law. *Id. Dabit* did not purport to limit the scope of the Delaware carve-out to covered securities; it neither considered nor addressed whether the Delaware carve-out preserves state-law shareholder class actions against issuers of securities that are not nationally traded.

Finally, interpreting the Delaware carve-out as Cowen suggests would have illogical results. Under Cowen's interpretation of the statute, St. Joseph's shareholders are deprived of their state-law remedy against St. Joseph because it agreed to exchange its securities with a corporation that issued nationally traded securities instead of with a closely held corporation. There is no dispute that Madden could bring state-law claims against St. Joseph if it had agreed to exchange its stock with another closely held corporation, because in the absence of any "covered security" the SLUSA preclusion provision would not be applicable in the first place. Madden might also

---

class actions for damages based on material misstatements or omissions in proxy and tender offer materials in connection with an extraordinary corporate transaction"); *Securities Litigation Uniform Standards Act of 1997: Hearing on H.R. 1689 Before the H. Comm. on Commerce, Subcomm. on Finance and Hazardous Materials*, 105th Cong. 64 (May 19, 1998) (testimony of Jack Coffee) (noting the important role of state class actions in the area of mergers and corporate reorganization and approving of the Senate's addition of the Delaware carve-out as an "attempt[ ]" to "carve back into the statute a role for the Delaware courts, and the courts of other States, to deal with fundamental questions of corporate governance").

be able to bring state-law claims against St. Joseph if St. Joseph were an issuer of nationally traded, covered securities, because St. Joseph would then be able to meet Cowen's definition of "the issuer" in the Delaware carve-out. In other words, under Cowen's theory, Madden's remedy against his own company for misstatements in connection with its efforts to obtain his approval of a merger is foreclosed because his company did not issue nationally traded securities and the acquiring company did.

**[6]** This reading of § 77p(d) is unreasonable, and it is inconsistent with the Delaware carve-out's purpose. Given that the plain language of the statute leads to "a rational, common-sense result," *Ariz. State Bd. for Charter Schools v. U.S. Dept. of Educ.*, 464 F.3d 1003, 1008 (9th Cir. 2006), and one consistent with congressional purpose, we read the term "the issuer" in the Delaware carve-out to refer to the corporation that is the issuer of the securities described in the Delaware carve-out, rather than being limited to an issuer of a "covered security" defined in 15 U.S.C. § 77p(f)(3).

B

**[7]** Cowen alternatively argues that even if St. Joseph qualifies as "the issuer" under the Delaware carve-out, Cowen did not make any statement "on behalf of" St. Joseph, and so Madden's complaint fails to allege a misleading communication made "by or on behalf of" the issuer or its affiliate as required by 15 U.S.C. § 77p(d)(1)(B)(ii)(I). The district court agreed, and on this basis held that the Delaware carve-out did not save Madden's suit from SLUSA preclusion.

In support of this argument, Cowen points us to the Reform Act, which defines the phrase "person acting on behalf of an issuer" to mean "an officer, director, or employee of the issuer." 15 U.S.C. § 77z-2(i)(6). Cowen argues that it did not act on behalf of St. Joseph because it is not an "officer, director or employee" of St. Joseph. Madden counters that we should

not rely on the Reform Act, which provided the definition of "on behalf of" in the context of creating a safe harbor for those who make forward-looking statements. Rather, Madden argues, we should rely on the SEC's regulations implementing the National Securities Market Improvement Act, which provide that an offering document is "prepared by or on behalf of the issuer" if the issuer: "(1) Authorizes the document's production, and (2) Approves the document before its use." 17 C.F.R. § 230.146(a). Madden claims that this definition is preferable because it relates to offering documents such as the registration statement at issue in this case. *See* 15 U.S.C. § 77r.

[8] Again, we must start with the plain language of the statute. *See Ariz. Health Care Cost Containment Sys.*, 508 F.3d at 1249. Because there is no definition of the phrase "on behalf of" in SLUSA itself, "we consider whether there is an unambiguous common sense meaning of the word that resolves the question" before us. *Id.* The common sense meaning of "on behalf of," according to the dictionary, is "in the interest of," "as a representative of," or "for the benefit of." Webster's Third New International Dictionary 198 (2002). Because the language in § 77p(d)(B)(ii)(I) has an unambiguous, common sense meaning, we see no need to look to other statutes that Congress chose not to cross-reference. Accordingly, we conclude that § 77p(d)(B)(ii)(I) refers to an individual or entity that makes a communication to an issuer's stockholders in the interest of, or as a representative of, the issuer.

[9] Even if we adopt this common sense definition of "on behalf of," Cowen argues that it was acting on behalf of only Orange Coast, because Cowen addressed its fairness opinion to that company. We are bound, however, by the allegations in Madden's complaint. *See U.S. Mortgage, Inc. v. Saxton*, 494 F.3d 833, 842 (9th Cir. 2007) (SLUSA "authorizes removal and dismissal based on the allegations in the complaint and does not require any additional evidentiary showing

from either party."). According to Madden's complaint, the management of Orange Coast and St. Joseph formed a Special Committee to "assess the opportunities for a strategic affiliation or sale." Madden alleges that the Special Committee, which included members of the boards of directors of St. Joseph and Orange Coast, retained Cowen for tasks that included "[r]endering an opinion as to whether or not the financial terms of an acquisition were fair, from a financial point of view, to the shareholders of Orange Coast and St. Joseph." Further, the complaint alleges that Cowen's fairness opinion was provided to the shareholders of St. Joseph with Cowen's consent and that the shareholders relied on the opinion when voting in favor of the merger. Madden's complaint therefore sufficiently alleges that Cowen's communication was "on behalf of" St. Joseph for purposes of the Delaware carve-out, regardless whether Cowen addressed its letter only to Orange Coast.

## IV

We conclude that Madden's complaint meets the requirements of the Delaware carve-out, 15 U.S.C. § 77p(d). The complaint is based on the law of the state (California) in which the issuer of the relevant securities (St. Joseph) was incorporated, and it involves a communication (Cowen's fairness opinion) with respect to the sale of those securities. The communication was made by Cowen "on behalf of" St. Joseph, to the shareholders of St. Joseph, concerning the shareholders' response to an exchange offer.

[10] Because the Delaware carve-out is applicable to Madden's suit, we **VACATE** the judgment of the district court and **REMAND** the case with instructions to remand to state court.