In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 23-2964

JOSE AGEO LUNA VANEGAS,

*Plaintiff-Appellee,*

*v.*

SIGNET BUILDERS, INC.,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:21-cv-00054-jdp — **James D. Peterson**, *Chief Judge.*

———————————

On Petition for Rehearing and/or Rehearing En Banc

———————————

DECIDED JANUARY 13, 2025

———————————

Before SYKES, *Chief Judge*, EASTERBROOK, ROVNER, BRENNAN, SCUDDER, ST. EVE, KIRSCH, JACKSON-AKIWUMI, LEE, PRYOR, KOLAR, and MALDONADO, *Circuit Judges.*

PER CURIAM. On consideration of plaintiff-appellee's petition for rehearing and/or rehearing en banc, filed on September 27, 2024, all judges on the panel have voted to deny panel

rehearing. A judge in regular active service called for a vote on the petition for rehearing en banc, and a majority in active service voted to deny the petition for rehearing en banc. Judges Jackson-Akiwumi and Maldonado voted to grant the petition for rehearing en banc.

Accordingly, the petition for rehearing and/or rehearing en banc is DENIED.

MALDONADO, *Circuit Judge*, joined by JACKSON-AKIWUMI, *Circuit Judge*, dissenting from the denial of rehearing *en banc*. The question presented in this case is whether each opt-in plaintiff in a Fair Labor Standards Act (FLSA) collective action must establish personal jurisdiction in the court where the case was filed. The majority concluded that they must, expanding the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. 255 (2017), and interpreting Federal Rule of Civil Procedure 4(k)(1)(A) as a jurisdictional requirement for each opt-in plaintiff. I respectfully disagree with both conclusions.

In my view, *Bristol-Myers* has no bearing on a federal court's exercise of personal jurisdiction under the Fifth Amendment, and the majority's interpretation of Rule 4 is overly expansive. My analysis of these topics aligns with the dissent's thoughtful and well-reasoned opinion. I write separately to elevate an issue that has thus far not been addressed: I am concerned that the majority's reading of Rule 4(k)(1)(A) violates the Rules Enabling Act of 1934, 28 U.S.C. § 2072, and raises significant constitutional concerns about the separation of powers between Congress and the Supreme Court. Though articulated by the Law Professor Amici,[1] this issue has neither been directly addressed by the majority opinion nor resolved by other courts. Below, I expand on this critical omission in the majority's decision. I conclude with my observations on the dramatic power shift to employers affected by the majority's rule.

---

[1] *See* ECF No. 21 (Brief for Amicus Law Professors Helen Hershkoff, Arthur Miller, Alan Morrison, John Sexton, & Adam Steinman) at 19.

\*\*\*

Some background on the dueling interpretations of Rule 4(k)(1) is necessary before I turn to substance. The courts that have addressed the question presented in this FLSA case have provided two facially reasonable interpretations of Rule 4(k)(1)'s text. One reading, espoused by the majority here and by several of our sister circuits, understands Rule 4(k)(1) as a jurisdictional rule that directly vests personal jurisdiction in some federal courts and divests it from others. *See Luna Vanegas v. Signet Builders, Inc.*, 113 F.4th 718, 724 (7th Cir. 2024); *Canaday v. Anthem Cos., Inc.*, 9 F.4th 392, 397 (6th Cir. 2021); *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861, 866 (8th Cir. 2021); *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 375 (3d Cir. 2022). In support, these courts point to the text of Rule 4(k)(1) which states that service "establishes personal jurisdiction over a defendant" only in some situations, such as when authorized by federal statute or when the defendant is otherwise "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." On that understanding, where there is no statutory authorization for effective service, as is the case with the FLSA, "Rule 4(k)(1) applies," such that before deciding a case, "*federal* courts must assess the limits on *state* courts' jurisdiction to determine their own." *Luna Vanegas*, 113 F.4th at 728.

The other reading of the Rule was advanced by the majority in *Waters v. Day & Zimmerman NPS, Inc.*, 23 F.4th 84, 93–94 (1st Cir. 2022). This reading sees Rule 4(k) as incorporating only the service of process rules of the state in which a district court sits. The *Waters* court relied on the rule's title, "Summons," the 1993 committee notes clarifying its limited scope to service-related matters, and the language in

subsection (k)'s heading emphasizing the territorial limits for effective service without addressing broader jurisdictional constraints. *Id.* at 93–94. Under this view, the Rule is a precondition on the ability of a court to exercise personal jurisdiction but does not directly vest or divest personal jurisdiction in any court. For reasons well-explained by that court, I believe this interpretation is superior based on Rule 4's text and historical context.

While the text of Rule 4 ostensibly accommodates both readings, the constitutional implications of the majority's reading warrant closer scrutiny. Congress, through the Rules Enabling Act (REA), delegated to the Supreme Court the authority to promulgate procedural rules—not jurisdictional rules. Interpreting Rule 4 as a jurisdictional rule oversteps this delegation, raising significant separation-of-powers concerns. Further, by reading Rule 4 to abridge the FLSA's collective action provision, the majority compounds its REA problems. Congress has expressed a clear and unequivocal policy permitting "similarly situated" claims against national employers. Interpreting Rule 4 as a jurisdictional rule allows the Supreme Court to abridge a democratically-enacted statute through the application of a purportedly conflicting federal rule—a result that the REA proscribes. In my view, these two related concerns compel the interpretation offered by *Waters* and prohibit the majority's interpretation. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 405–06 (2010) (when a rule is "susceptible of two meanings— one that would violate § 2072(b) and another that would not[,]" the proper approach is to "*interpret* [the rule] . . . in a manner that avoids overstepping its authorizing statute"). I explain these related problems next, after first briefly outlining the strictures of the REA.

I

The starting point of my analysis is the REA's narrow purpose. The REA delegates legislative power to the Supreme Court "to prescribe general rules of practice and procedure . . . for cases in the United States district courts." 28 U.S.C. § 2072(a). Congress warned that the "rules shall not abridge, enlarge or modify any substantive right." *Id.* § 2072(b). A federal rule complies with this mandate if it "really regulates procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941). The test asks, "what the rule itself regulates: If it governs only 'the manner and the means' by which the litigants' rights are 'enforced,' it is valid; if it alters 'the rules of decision by which [the] court will adjudicate [those] rights,' it is not." *Shady Grove*, 559 U.S. at 407 (quoting *Miss. Publ'g Corp. v. Murphree,* 326 U.S. 438, 446 (1946)).

Thus, to be a valid exercise of delegated power, a federal rule must regulate procedure. But the majority construes Rule 4 as directly regulating *jurisdiction*. The statutory phrase "rules of procedure" cannot encompass rules of jurisdiction. Jurisdictional rules determine whether a federal court has the authority to hear a case in the first place, before applying any procedural rules. *See Kontrick v. Ryan*, 540 U.S. 443, 455 (2004) (noting that jurisdictional rules, as distinct from procedural rules, are "not . . . claim-processing rules"). The phrase "jurisdictional rules" refers to rules "delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Id.* Under this definition, a rule that directly regulates

personal jurisdiction, that is, that delineates the persons falling within the court's authority, is not a rule of procedure. This is in part because the jurisdictional question precedes the application of any procedural rule. *See id*. at 454 (quoting *Schacht v. United States*, 398 U.S. 58, 64 (1970) ("The procedural rules adopted by the Court [via the rulemaking process] for the orderly transaction of its business are not jurisdictional."); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 370 (1978) ("[I]t is axiomatic that the Federal Rules of Civil Procedure do not create or withdraw jurisdiction."). It is therefore far from apparent that Rule 4 can properly be read, as the majority does, to regulate the personal jurisdiction of the federal courts.

The REA "underscores the need for caution" in circumstances like these, which present a conflict between the judicial branch and the democratically-elected legislature. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999). "[N]o reading" of Rule 4(k) "can ignore the Act's mandate that 'rules of procedure shall not abridge, enlarge, or modify any substantive right[.]'" *Id*. (quoting 28 U.S.C. § 2072(b)). In my view, the scope of Rule 4 "is best kept within [the] tolerable limits" of regulating only service of process, an interpretation reflecting that both "the Rules Enabling Act and the general doctrine of constitutional avoidance . . . jointly sound a warning of the serious constitutional concerns[.]" *Id.* at 845–46.

The majority does not engage fully with the REA. Instead, it dismisses questions about the relationship between procedure and jurisdiction by stating that "[t]he Supreme Court has long held 'Rule 82 must be taken to refer' to

'jurisdiction of the subject matter,' not over the person."[2] *Luna Vanegas*, 113 F.4th at 729–30 (quoting *Murphree*, 326 U.S. at 445).  I agree that *Murphree* established that, under the REA, procedural rules are distinct from and cannot be conflated with rules governing subject-matter jurisdiction. But I do not read *Murphree* as holding that Rule 82's bar does not apply to personal jurisdiction, as the majority suggests. I see no holding about personal jurisdiction in *Murphree*. With *Murphree* being of little help to the majority, and absent any clear intention from Congress, I do not believe that the REA meant to delegate authority over personal but not subject-matter jurisdiction—related doctrines considered similar in more familiar contexts.

Consider *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999). There, to be sure, the Court acknowledged some ways in which "[t]he character of the two jurisdictional bedrocks unquestionably differs."  *Id.* at 583. But those differences "do not mean that subject-matter jurisdiction is . . . the more 'fundamental'" of the two.  *Id.* at 584. "Personal jurisdiction, too, is 'an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication.'" *Id.* (citing *Emps. Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937)). The implication of the majority's position is that subject-matter jurisdiction is the only real rule of jurisdiction while rules of personal jurisdiction are merely procedural. This is a recipe for unnecessary confusion in the courts, which treat personal jurisdiction and subject-matter

---

[2] Rule 82 provides: "These rules do not extend or limit the jurisdiction of the district courts . . . ." FED. R. CIV. P. 82.

jurisdiction similarly, at similar stages in litigation, and using similar analytical frameworks. *See id*.

The better view would treat rules of personal jurisdiction and subject-matter jurisdiction as both jurisdictional and substantive. In fact, there are few rights that are more substantive than rights governing when a court can exercise jurisdiction over a person and also when a person can access judicial proceedings at all. A rule of personal jurisdiction establishes whether an individual may resolve a dispute in a federal court in the first instance. Such rules implicate "our deep-rooted historical tradition that everyone should have his own day in court," not just what procedures apply once an individual is already there. *Ortiz*, 527 U.S. at 846 (quoting *Martin v. Wilks*, 490 U.S. 755, 762 (1989)).

On the majority's reading, Rule 4(k) stands as a unique and unparalleled aspect of our civil procedure. Unlike any other Federal Rule on the books, Rule 4(k) purportedly establishes jurisdictional rules that directly regulate the personal jurisdiction of every federal district court—without any express congressional mandate to do so. This approach diverges from Congress's traditional method of delegating jurisdictional rule-making to the courts. When Congress intends to allow the federal courts to make jurisdictional rules through the REA process, it does so explicitly. *See, e.g.*, 28 U.S.C. § 2072(c) (2018); *see also* Scott Dodson, *Rule 4 and Personal Jurisdiction*, 99 NOTRE DAME L. REV. 1, 27–28 (2023). It would be incongruous for Congress to have expressly delegated rulemaking in some areas affecting jurisdiction while silently granting the Supreme Court broad, untethered power to define federal courts' personal jurisdiction through a procedural rule governing service of process. *Cf. Whitman v.*

*Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) (noting that Congress does not "hide elephants in mouseholes").

## II

Even if I agreed that rules of personal jurisdiction are "procedural" under the REA, I would still have significant separation-of-powers concerns regarding the majority's application of Rule 4. The majority's approach undermines Congress's intent by effectively amending the FLSA's "similarly situated" collective action provision to impose a geographic restriction. In doing so, it empowers the Supreme Court to override congressional purpose through a federal rule. This exceeds the permissible scope of procedural regulation under the REA, as the Rule directly conflicts with the statute. *Shady Grove*, 559 U.S. at 425 (Stevens, J., concurring in part) (explaining that "the separation-of-powers presumption . . . counsel[s] against judicially created rules displacing . . . substantive law.").

The FLSA's collective action provision amounts to a "similarly situated" claim-specific aggregation tool—the opt-in process—that Congress meant to displace conventional service requirements associated by default with most lawsuits. This reflects Congress's intent to establish a unified remedial framework, allowing employees to sue employers on behalf of all those who are "similarly situated." 29 U.S.C. § 216(b); *see, e.g.*, *Waters*, 23 F.4th at 97. As the Supreme Court has recognized, "Congress [has] left intact the 'similarly situated' language providing for collective actions, such as this one. The broad remedial goal of the statute should be enforced to the full extent of its terms." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989). The statute also suggests

the need for jurisdiction over the claim of the named plaintiff who initiated the action but says conspicuously nothing about opt-ins. *Hoffmann-La Roche*, 493 U.S. at 167–68 ("[A]n action 'may be maintained against *any* employer . . . in *any* Federal . . . court of competent jurisdiction by *any* one . . . employee[] for . . . himself . . . and other employees similarly situated.'" (quoting 29 U.S.C. § 216(b) (emphases added)). The majority's interpretation is both in direct tension with the statute's text and undermines its remedial purpose, effectively substituting judicial preferences for Congress's legislative judgment. This overreach heightens the separation-of-powers concern and risks eroding the integrity of democratically-enacted statutes.

In fact, Luna Vanegas's circumstances are exactly what Congress sought to address via § 216(b). Working on a guest-worker visa, Luna Vanegas constructed livestock confinement structures in several states (Wisconsin, Indiana, Iowa, and Minnesota) for his employer Signet Builders, Inc., and sought unpaid overtime wages for time spent working in each state. Luna Vanegas claims that Signet denied him and all similarly situated guest workers overtime pay because of its corporate policy of misclassifying them as agricultural workers exempt from the protections of the FLSA.

Yet, under the majority's reading, only employees who worked in Wisconsin—where the lawsuit was filed and where Luna Vanegas found a legal services lawyer to represent him—can join this collective action, excluding workers from Indiana, Iowa, and Minnesota who are alleged to have suffered the same harm. The majority downplays this seismic consequence by observing that employees can always file suit in the employer's home state (here, Texas). But (even

assuming that an employee can find a lawyer to litigate in the employer's home forum), the majority's rule limits the plaintiff's choice of forum and creates a preference for the employer's locale if the employee's allegations cross state lines. This undermines the balance of power between employees and their employers that the FLSA sought to remedy. *See, e.g.*, *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707 n. 18 (1945) ("[T]he prime purpose of the legislation was to aid the unprotected, unorganized and lowest paid of the nation's working population . . . who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage."). Forcing plaintiffs whose allegations support an interstate collective to file in the employer's home state tilts the scales in favor of employers. Given this practical context, we should resist reading Rule 4 to impose a new geographic limitation on language in a federal statute, where no such limitation on the scope of collective actions otherwise exists. Congress already made the determination on how to appropriately limit the scope of collective actions, to prevent judicial overreach and protect employers, by limiting them to only those employees who are "similarly situated."

The majority downplays the significant shift in decades of FLSA practice created by its ruling. For example, it asserts that "in practice courts treat FLSA collectives as agglomerations of individual claims." *Luna Vanegas,* 113 F.4th at 725. But, in reality, payroll records do much of the work in proving many FLSA claims, supported by representative discovery. *See, e.g., Smith v. Fam. Video Movie Club, Inc.*, 2012 WL 4464887, at *2 (N.D. Ill. Sept. 27, 2012) ("[I]n FLSA collective actions, permitting full-scale, individualized discovery of all opt-in plaintiffs would frequently undermine the purpose and usefulness of collective actions. . . . For these reasons, courts

have allowed representative discovery in FLSA collective actions.") (collecting cases)). And not every opt-in plaintiff needs to testify at trial to prove their individual claim; representative testimony is common. *See, e.g.*, *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1279 (11th Cir. 2008) ("[T]he general rule [is] that not all employees have to testify to prove overtime violations."); *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701 (3d Cir. 1994) ("Courts commonly allow representative employees to prove violations with respect to all employees."). FLSA claims are litigated much more like a representative action, and not as an "agglomeration of individual claims" as the majority suggests.

The FLSA structurally balances the scales to allow one employee to come forward first for others who are similarly situated. That employee, like Luna Vanegas, becomes the name and face of the lawsuit. Often, only a few employees (if they can secure counsel) are willing to risk being the first to sue the hand that feeds them. The collective action provision exists to support those employees who choose to be the first, by allowing them to join together all similarly situated employees to collectively vindicate their rights, irrespective of where they live. That process not only supports the named plaintiff but provides other employees who may not have the means or willingness to take on a lead role the ability to opt-in. But these dual benefits—support for the named plaintiff and ease of access to litigation for the opt-ins—are significantly diminished under the majority's rule. The employees that take the risk to bring suit on behalf of their co-workers are now limited to a collective of employees who also

worked in the state where the suit was filed unless they can manage to sue in the employer's home state.[3]

The majority transforms personal jurisdiction (meant as a shield to protect out-of-state defendants from being hauled into a forum with which they have no connection) into a sword for national employers to cut down the size of collectives in any state where they are not subject to general personal jurisdiction. This only benefits employers, who already face little to no prejudice or harm from the alternative, undoing the balance of power the FLSA struck. Take Signet. It provides construction services in Wisconsin and is subject to specific personal jurisdiction there because of work performed by Luna Vanegas and others. In this era of electronic discovery and remote proceedings, there may be little practical difference (especially before trial), for Signet to defend an interstate collective action in federal court in Wisconsin, as opposed to its home state of Texas. Signet may anticipate more favorable results in its home state, or more likely, that employees will not be able to secure counsel willing to bring suit in Texas (or other states) at all (Luna Vanegas brought suit with the assistance of a Wisconsin legal

---

[3] We should be especially wary of imposing an inefficient geographical limitation when Congress has signaled its intent that the FLSA be enforced to the fullest extent by permitting employees to seek attorney's fees. 29 U.S.C. §216(b) ("The court . . . shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). The FLSA's fee provision is meant to encourage enforcement and further the FLSA's policy aims. *See Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 n.16 (1981).

services organization). Either way, only Signet benefits from this arrangement.

***

In sum, I would have granted *en banc* review so that the full court could consider the dissent's position and whether the majority's interpretation of Rule 4(k) violates the Rules Enabling Act in the two ways described herein.

Accordingly, I respectfully dissent from the denial of rehearing *en banc*.